BESH v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION.

1. APPEAL AND ERROR—NONJURY CASE—PREPONDERANCE OF THE EVIDENCE.
  On appeal from judgment by court in action at law tried without a jury in which defendant assigned as error that the judgment is against the preponderance of the evidence, it is necessary that Supreme Court review and weigh the testimony presented by both parties (Court Rule No. 64 [1933]).

2. INSURANCE—TOTAL DISABILITY BENEFITS—HEALTH AND ACCIDENT POLICY—BURDEN OF PROOF.
  In action by insured to recover total disability benefits under health and accident policy it was incumbent upon plaintiff to establish by a preponderance of the evidence that he was wholly and continuously disabled and suffered a total loss of time.

3. APPEAL AND ERROR—NONJURY CASE—FINDINGS OF TRIER OF THE FACTS—CREDIBILITY—WEIGHT OF EVIDENCE.

   The trial judge in an action tried without a jury, who heard plaintiff and other witnesses as trier of the facts, was better able to judge of the credibility of, and weight to be accorded, their testimony, and Supreme Court will not reverse his decision unless the evidence clearly preponderates in the opposite direction.

4. INSURANCE—TOTAL DISABILITY BENEFITS—HEALTH AND ACCIDENT POLICY—FINDINGS OF TRIAL COURT—EVIDENCE.

   In insured's action under health and accident policy for total disability benefits because of an automobile accident in which his driver was killed and plaintiff suffered fractures of ribs, contusions on the head and concussion of the brain, finding of trial judge sitting without a jury that plaintiff was totally disabled at the time of the trial was not against the preponderance of the evidence which was conflicting.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted October 6, 1942. (Docket No. 2, Calendar No. 42,040.) Decided February 23, 1943.

Assumpsit by Leon Besh against Mutual Benefit Health & Accident Association, a Nebraska corporation, on an insurance policy. Judgment for plaintiff. Defendant appeals. Affirmed.

*Floyd T. Schermerhorn* and *Alexander J. Jemal,* for plaintiff.

*Clifford M. Toohy,* for defendant.

STARR, J. Defendant appeals from a judgment of $2,600 for plaintiff, rendered by the trial court sitting without a jury.

On September 28, 1937, defendant company issued to plaintiff its health and accident insurance policy containing the following provisions:

"Part D. Total accident disability benefits for life.

"If such injuries, as described in the insuring clause, do not result in any of the above mentioned specific losses *but shall wholly and continuously. disable the insured for one day or more, and so long as the insured lives and suffers said total loss of time,* the Association will pay a monthly indemnity at the rate of $50 per month for the first 15 days and at the rate of $100 per month thereafter.

"Part E.   Partial accident disability $40 per month.

"If such injuries, as described in the insuring clause, shall wholly and continuously disable the insured from performing one or more important duties, the association will pay for the period of such partial loss of time, but not exceeding three consecutive months, a monthly indemnity of $40."

On May 21, 1938, plaintiff, an automobile and real estate salesman about 50 years of age, was severely injured in an automobile accident. Upon his representation of total and continuous disability, defendant thereafter paid plaintiff in monthly instalments the sum of $1,500. Defendant then refused to make further payments, and on July 23, 1940, plaintiff began suit, claiming that the sum of $1,200 was due him under the policy in question. He alleged that permanent injuries sustained in the automobile accident made it impossible for him to perform any work. Defendant answered, denying plaintiff's claim of permanent injuries and total disability and alleging that he had obtained payment of the above-mentioned sum of $1,500 through "false and fraudulent" representations as to his disability. By way of set-off and recoupment defendant sought to recover the amount it had paid plaintiff. Plaintiff replied, denying defendant's charge of fraud.

By agreement during the trial plaintiff's declaration was amended to claim damages for total disability benefits to the date of trial. At the conclu-

sion the trial court rendered opinion, stating, in part:

"This determination only decides the lawsuit before me, and necessarily that lawsuit is limited to the disability of the plaintiff up to the time of trial. This court could not and does not pass upon any future disability, and therefore that matter is held open for future determination.

"The court holds that this plaintiff, as a result of the accident, suffered a head injury, with post concussion syndrome, and that there was actual brain injury with sequelae which have manifested themselves and still are manifesting themselves in a number of different respects, which indicate total disability.

"My decision in this case, of course, is based upon the testimony of the various witnesses, but it is also based upon my observation of the plaintiff upon the witness stand and in court.   *   *   *

"There is no question but what he was wholly disabled for at least several months following the accident.   The issue before me is whether or not his disability continued and, if so, whether it continued up to the time of trial; and I find that it did so continue.   *   *   *

"After considering all of the evidence, weighing the opinions of both sets of experts, and, I hope, without discounting the positive testimony of several of the witnesses called by the defendant, the court is firmly of the opinion that Leon Besh is totally disabled at this time."

On November 19, 1941, the trial court entered judgment of $2,600 for plaintiff.   Defendant appeals from such judgment, assigning as error under Court Rule No. 64 (1933) that the judgment is against the preponderance of the evidence.

To determine whether or not the judgment is against the preponderance of the evidence, it is nec-

essary that we review and weigh the testimony presented by both parties. The question determined by the trial court and for review on this appeal is whether or not plaintiff was ''wholly and continuously'' disabled and suffered a ''total loss of time,'' under the above-quoted provisions of the insurance policy.

The automobile accident in which plaintiff was injured occurred on Provincial highway No. 3 near Cayuga, Ontario, Canada. The driver of the car in which plaintiff was a passenger was fatally injured. Immediately following the accident plaintiff was removed to a hospital in Hamilton, Ontario, where he remained under medical care until June 2, 1938, when he was taken by train and ambulance to a hospital in Highland Park, Michigan. On June 10, 1938, he was removed from the Highland Park hospital to his home where, according to his testimony, he was obliged to remain in bed for several weeks. The record indicates that within a few months plaintiff recovered sufficiently from his bone fractures and other injuries to be up and around. He could walk and could travel about the city by public conveyances, went to doctors' offices, and attended to his business affairs. In January, 1939, he went by train to Florida and there attended the dog races, went to the beach and to motion picture theaters.

Plaintiff's injuries were described, in part, by defendant's witness Dr. Walkey, head of the roentgenology department of Hamilton General Hospital, as follows:

''From my examination and studies of the X-ray plates, I saw no evidence of fracture of the skull of Mr. Besh although the face bones are very intimately associated with the skull. The plates of the head itself showed evidence of a fracture of the left zygoma, about the center portion of the left

zygoma. That is in the temple region. It is right over the temple. * * * Then also a fracture of what we call the malar bone, the malar process really of the bone, that runs up alongside the eye, and at the base of that it was fractured across, that is the base what we call the malar process. Then a fracture also below the eye in the margin of the superior maxilla. * * * Then on the right side there was a fracture of the condylar process of the mandible, that is the lower jaw, that was broken right across, and quite an irregular fracture. Then the condyle of the mandible, that is the upper end of the lower jaw, the condylar portion, was dislocated forward out of articulation so that the fragments of the mandible on that side were overlapping and angulated.

"There was no evidence of any fracture of the spine. There was a fracture of the tenth, eleventh and twelfth ribs on the left side. The fractures were about three inches from the spine itself, and a fracture of the eighth rib on the right side at about the axillary line. * * *

"It is possible that there might be a lineal fracture in the head that would not show in the X-ray plates. * * *

"The fractures that I found were three on the left side of the face and one on the right side and the dislocation. * * * This lower jaw fracture was very severe and the parts were misplaced and overlapping."

There was also evidence that plaintiff's skull was fractured; that he suffered concussion of the brain; that there was some bleeding in his right ear canal; and that he was severely bruised and shocked. Defendant's witness Dr. Weylie, who removed plaintiff from the scene of the accident to the Hamilton hospital, testified: "I know that Besh had a fracture of the skull."

Plaintiff's witness Dr. Yesayian, who examined plaintiff the day following the accident, testified:

"He had evidences of contusion and concussion. * * * That blow carried to the brain, caused a very severe concussion of his brain, the result of which he is still suffering with. * * * Mr. Besh has what we call post concussion syndrome."

A neurological surgeon and diagnostician who examined plaintiff on August 18, 1938, testified:

"I made a diagnosis of the head injury with post concussion syndrome, and I felt that he should improve slowly. * * * Though the findings are negative in his case, this does not imply that he may not have a great deal of brain injury with sequelae. * * * Bleeding in the ear, I feel is a good indication that most probably there was a fracture of the skull, even though it may not have been shown by X-rays."

Defendant presented medical testimony disputing plaintiff's evidence that he sustained a skull fracture, severe brain injury, and concussion, and particularly disputing plaintiff's claims as to the resulting effects or sequelae of his injuries. In its brief defendant states, in substance, that it is willing to pay plaintiff total disability benefits for six months following his accident and partial disability for three months, but strenuously contends that after that time plaintiff was able to do some kinds of work and was not entitled to further benefits.

The real controversy in this case concerns the resulting effects or sequelae of plaintiff's injuries and whether or not he was totally disabled up to the time of the trial. Plaintiff presented testimony indicating that, prior to the accident, he earned from $200 to $300 a month as a salesman; that he was strong, healthy, socially active, and engaged in

wrestling bouts; that since the accident he has been unable to do any work and has been wholly disabled. He testified that he had continuous head pains, dizziness, and could not concentrate; that he was physically weak, nervous, restless, irritable, and quarrelsome; that his back bothered him, and that he was obliged to wear a brace or support; that he could not sleep or stand noise or confusion. Medical testimony adduced by plaintiff to some extent corroborated his claim of total disability. There was also medical and lay testimony indicating that plaintiff had suffered a change in personality; that he could not associate with people; and that his health was generally broken. Dr. Yessayian testified, in part:

"He (plaintiff) has not been able to do any work. I would say that he has been wholly disabled since the accident   *   *   *   and he is wholly disabled at this time.   *   *   *   Mr. Besh has what we call post concussion syndrome. That is the sequela of a severe concussion of the brain. Post concussion syndrome evidences itself by dizziness, pounding in the head, personality changes, inability to concentrate, irritableness, nervousness, and quarrelsomeness."

A medical witness who examined plaintiff about two weeks prior to the trial testified:

"My examination revealed a permanently injured individual.   *   *   *   I don't think he would be able to do any concentrated sustained work. There is a marked mental injury and that is reflected and borne out by both his subjective symptoms and objective symptoms that I found which unfits him for any sustained work of any kind, either mental or physical. I mean there was an injury to the brain and central nervous system, which was evidently very severely injured, to produce the train of after-symptoms that he developed."

Plaintiff testified that since the accident he had been continuously under doctors' care. A friend of plaintiff's said that, "Since the accident I have noticed a change in his (plaintiff's) personality. He is not able to carry on a conversation, he flies up and says things that would not ordinarily be stood for by a person. I don't believe he is capable of doing anything." Another witness testified that plaintiff's "physical health and disposition is all shot.  *  *  *  He has been awful nervous, excited." A neurological surgeon and diagnostician who examined plaintiff on August 18, 1938, and again on October 28, 1941, testified:

"I did not think that the man (plaintiff) was capable of physically or mentally sustained work. I felt that he was disabled.  *  *  *  There were no evidences of malingering in any of the tests.  *  *  * I would say that he was in no condition to carry on his work.  *  *  *  I feel that he is the sort of a fellow that cannot be rehabilitated.  *  *  *  The whole complex, the structure of his demeanor is not that of a normal person, and not a person who you would like to work for you.  *  *  *  He could work at a modest form of selling, if such selling does not imply persuasion and merchandising."

Another medical witness specialized in neuropsychiatry, who examined plaintiff on September 15, 1941, testified:

"It is my opinion that this man has suffered a permanent injury which renders him incapable of sustained mental or physical effort, at this time, and it is my opinion that this is a permanent type of injury. It is my opinion that there has been actual brain damage sustained by this individual, which evidences itself by his precise methodology, and I feel that the prognosis for ultimate or complete recovery is distinctly unfavorable.  *  *  *

If something sufficiently light' could be found which would require very little in the way of sustained effort, either mentally or physically, it is possible that he might be able to do something, but I personally do not know of any vocation in which he could make a substantial livelihood."

Defendant contends that plaintiff is a malingerer and that he falsely and fraudulently misrepresented his condition of disability. As bearing on the credibility of plaintiff and witness Dr. Yesayian, defendant calls particular attention to their testimony that plaintiff was unconscious for upwards of 12 hours immediately following his accident, and to the testimony of several witnesses for defendant indicating that plaintiff was not unconscious during such time. A medical witness for defendant, who examined plaintiff November 7, 1940, stated:

"Based on the examination and the case history regarding Leon Besh, my conclusion is that he was not totally disabled. In conclusion: 'This man undoubtedly had very severe injuries and the history indicates that he had fairly severe brain concussion. At the present time, however, I feel that sufficient time has elapsed to allow recovery from these conditions and that he should be increasing his exercise and undertaking some work. He seems to have a fixed idea that he is not going to be able to work and there is nothing about my examination that justifies me in coming to any such conclusion. I believe he needs increase in both physical and mental exercise by way of treatment and the sooner he returns to work the better it will be for his health.' * * *

"My conversation with Mr. Besh would lead me to believe that he had a perfectly rational and normal personality, * * * and the rest of my examination did not reveal any evidence of organic nerve disease or injury. * * * There was noth-

ing about my conversation with him, nor in his cast of countenance, or speech, or anything of the kind, which suggested personality change. * * *

"His subjective symptoms were very definitely affected by the expectancy of monthly payments from an insurance company."

Another medical witness. for defendant testified, in substance, that plaintiff was not suffering from any organic or functional disorder and that he was not disabled. Defendant also presented medical testimony indicating that plaintiff should have been able to resume his occupation of salesman within three or four months after the accident.

Defendant claims that plaintiff had not resumed his former occupation of selling real estate and automobiles because there was no business in those fields; that although plaintiff might be unable to continue his former selling activities, it was incumbent on him to do other work. Defendant argues that plaintiff was mentally and physically able to engage in the selling of various commodities and, therefore, was not wholly disabled and had not suffered a total loss of time within the terms of the policy in question.

The terms of the policy hereinbefore quoted are clear and unambiguous. The burden was on plaintiff to establish by a preponderance of the evidence that he was "wholly and continuously" disabled and suffered a "total loss of time." In *Wheeler* v. *Equitable Life Assurance Society of the United States,* 294 Mich. 520, we considered the question of disability under the terms of a group insurance policy providing for payment in case of "total and permanent disability." Mr. Justice CHANDLER, writing for the court, said, p. 525:

"Defendant contends that the trial court's finding that the insured was totally and permanently

disabled within the meaning of the policy prior to August 1, 1935, is contrary to the law and to the great weight of the evidence. It is admitted that the insured did some work for the Coffee Company until the month of November, 1935. But the mere fact that an insured carried on his work to some extent after a certain date does not, under the usual legal definition of total and permanent disability, conclusively indicate that he was not permanently and totally disabled as of that date. See *Turner* v. *Fidelity & Casualty Company of New York*, 112 Mich. 425 (38 L. R. A. 529, 67 Am. St. Rep. 428); *Hohn* v. *Inter-State Casualty Co.*, 115 Mich. 79; *Hallock* v. *Income Guaranty Co.*, 270 Mich. 448. In *Young* v. *Travelers Ins. Co.*, 80 Me. 244 (13 Atl. 896), which was quoted by this court in the *Hohn Case*, it was said:

" 'We think the presiding justice might have gone further in the construction of this clause of the policy, and instructed the jury that, to entitle the plaintiff to recover, he was not required to prove that his injury disabled him to such an extent that he had no physical ability to do what was necessary to be done in the prosecution of his business, but that it was sufficient if he satisfied them that his injury was of such a character and to such an extent that common care and prudence required him to desist from his labors, and rest, so long as it was reasonably necessary to effectuate a speedy cure,—so that a competent and skillful physician called to treat him would direct him to do so.' "

In the present case it would serve no purpose to discuss further the conflicting and confusing testimony which presented questions of fact as to plaintiff's condition of disability. Having observed and heard plaintiff and other witnesses, the trial court, as trier of the facts, was better able to judge the credibility of, and weight to be accorded, their testimony. In *Vannett* v. *Michigan Public Service Co.*, 289 Mich. 212, we said (p. 218):

"We have repeatedly said in cases tried without a jury that the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to. In such cases we do not reverse unless the evidence clearly preponderates in the opposite direction."

See, also, *Eagan* v. *Edwards,* 294 Mich. 260; *Hanson* v. *Economical Cunningham Drug Stores, Inc.,* 299 Mich. 434; *Hazen* v. *Rockefeller,* 303 Mich. 536.

We have carefully studied the record and are not convinced that the judgment was against the preponderance of the evidence. The judgment is affirmed with costs to plaintiff.

Boyles, C. J., and Chandler, North, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.