EBERT v. PRUDENTIAL INSURANCE COMPANY
OF AMERICA.

1. APPEAL AND ERROR—NONJURY CASES—PREPONDERANCE OF EVIDENCE.

The Supreme Court does not reverse a nonjury case on issues of fact unless the evidence clearly preponderates in the opposite direction.

2. COURTS—CONSTRUCTION OF INSURANCE POLICY—TOTAL AND PERMANENT DISABILITY.

Provisions of insurance policies referring to total and permanent disability are construed in the light of previous decisions of the Supreme Court, where appeal called for opinion on issue of fact.

3. INSURANCE—CONSTRUCTION OF POLICY—AMBIGUITY.

Ambiguous or obscure provisions in an insurance policy are liberally construed in favor of the insured.

4. SAME—TECHNICAL CONSTRUCTION OF POLICIES NOT FAVORED.

Technical construction of insurance policies is not favored.

5. SAME—TOTAL AND PERMANENT DISABILITY—QUESTION OF FACT.

Whether an insured is totally and permanently disabled entitling him to waiver of premiums and to disability benefits under a life insurance policy is a question of fact.

6. SAME—TOTAL AND PERMANENT DISABILITY—NONJURY CASE—PREPONDERANCE OF EVIDENCE.

Trial court's finding in nonjury case that plaintiff, an undertaker, insured under life insurance policies entitling him to certain

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 3 Am Jur, Appeal and Error § 896 et seq.
[3] 29 Am Jur, Insurance § 166.
[4] 29 Am Jur, Insurance § 158.
[5, 6] 29 Am Jur, Insurance §§ 434, 1160 et seq.
[5, 6] Construction and effect of provision of life insurance policy for waiver of future premiums in case of disability. 68 ALR 1389.
Construction and application of provision of accident policy or accident feature of life policy extending benefits to one disabled to engage in any occupation or employment for wage or profit. 149 ALR 7; 153 ALR 430.
When insured deemed to be totally and continuously disabled or unable to transact all business duties. 24 ALR 203; 37 ALR 151; 41 ALR 1376; 51 ALR 1048; 79 ALR 857; 98 ALR 788.
Presumption of total disability raised by provision of statute or policy upon continuation of disability for specified period. 110 ALR 631.
Provision limiting indemnity to permanent disability as affected by clause providing for payment for life and during disability. 54 ALR 294.

benefits in the event he became totally and permanently dis-
abled, had established that his disability was total and perma-
nent in that he not only could not perform any substantial
part of the undertaker business, but that his condition was
such that he could not perform any other work for remunera-
tion is not disturbed, where, although there were proofs from
which a contrary conclusion could be drawn, the evidence does
not clearly preponderate in the opposite direction.

Appeal from Clinton; Cash (Paul R.), J.   Sub-
mitted October 16, 1953.   (Docket No. 49, Calendar
No. 45,774.)   Decided November 27, 1953.

Action by Clarence D. Ebert against Prudential
Insurance Company of America on insurance poli-
cies.   Judgment for plaintiff.   Defendant appeals.
Affirmed.

*Leo W. Corkin, Dykema, Jones & Wheat* and
*Thomas L. Munson,* for plaintiff.

*Cook, Michelson & Hoffman* (*Gilbert Y. Ruben-
stein,* of counsel), for defendant.

Boyles, J.   This appeal calls for opinion on an is-
sue of fact and involves the construction of certain
provisions in 4 life insurance policies, which provide
for payment of benefits for total and permanent dis-
ability.   The crucial question is whether the insured
was totally and permanently disabled within the
terms of the policies.

Plaintiff was engaged in the business of an under-
taker.   In 1916 the defendant insurance company
issued a $1,000 policy on the life of the plaintiff,
which included "provisions as to permanent disabil-
ity," as follows:

"If the insured, after the first premium on this
policy has been paid, shall furnish due proof to the
company,   *   *   *   that he, at any time after pay-
ment of such first premium, from any cause whatso-

ever shall have become permanently disabled or
physically or mentally incapacitated to such an ex-
tent that he by reason of such disability or incapacity
is rendered wholly and permanently unable to engage
in any occupation or perform any work for any kind
of compensation of financial value, the company up-
on receipt of such proof will waive the payment of
each premium that may become payable thereafter
under this policy during such disability.

"If such disability shall occur before the insured
is 60 years of age. the company will, in addition to
such waiver, during such disability, pay to the in-
sured the amount insured, less any indebtedness, in
120 monthly instalments during 10 years, each instal-
ment of the amount of $9.74 per $1,000 of insurance
payable; the first instalment to become payable 6
months after the company shall have received such
proof and subsequent instalments monthly there-
after."

In 1919 the company issued 2 additional $1,000 pol-
icies on the life of the plaintiff, both containing iden-
tical provisions for "total and permanent disability
benefits," and waiver of premiums in such event. The
provisions for disability benefits were as follows:

"Total and Permanent Disability Benefits:
Monthly Income 10 Dollars per Month for Each
$1,000 of the face amount of insurance, payable to the
insured in event of total and permanent disability
before age 60, subject to the provisions as to total
and permanent disability contained in the policy.
Waiver of Premiums in event of total and permanent
disability as hereinafter provided, * * *

"Provisions as to Total and Permanent Disabil-
ity—Waiver of Premiums—Monthly Payments to
the Insured.

"Disability before age 60—Waiver of premiums.—

"If the insured, after the first premium on this
policy has been paid, shall furnish due proof to the
company, while this policy is in full force and effect
and while there is no default in the payment of prem-

ium, that he, at any time after payment of such first premium, while less than 60 years of age, from any cause whatsoever shall have become permanently disabled or physically or mentally incapacitated to such an extent that he by reason of such disability or incapacity is rendered wholly and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value, the company upon receipt of such proof will waive the payment of each premium   *   *   *   during such disability.   *   *   *

"Disability before age 60—Monthly income to the insured.—If such disability shall occur before the insured is 60 years of age the company will, in addition to such waiver, pay to the insured monthly as specified on the first page hereof, the sum of $10 for each $1,000 of the face amount of insurance under the policy."

In 1930 the company issued a 4th life insurance policy to plaintiff as the insured, for $10,000, with the following provisions as to total and permanent disability benefits and waiver of premiums:

"TOTAL AND PERMANENT DISABILITY BENEFITS: MONTHLY INCOME 10 DOLLARS PER MONTH FOR EACH $1,000 of the amount of insurance payable to the insured in event of total and permanent disability before the anniversary date of this policy nearest the 60th birthday of the insured, subject to the provisions as to total and permanent disability contained in the policy.

"WAIVER OF PREMIUMS in event of total and permanent disability.

"ANNUAL PREMIUM DURING FIRST THREE YEARS: $298.30.   Thereafter an annual premium of $340.60. The premium specified above includes a constant extra annual premium of $58.80 for the total and permanent disability benefits, which extra premium in no event shall be payable on and after the anniversary date of the policy nearest the 60th birthday of the insured.

"Provisions as to Total and Permanent Disability Before Age 60: Waiver of Premiums, Monthly Income to the Insured

"The disability benefits hereinafter specified will be granted by the company if the insured shall become totally and permanently disabled, from bodily injury or disease, to such an extent as to be incapacitated from engaging in any occupation for remuneration or profit.

"Disability Benefits: (1) Waiver of Premiums.—The company will waive the payment of any premium or premiums the due date of which, as specified in the policy, shall occur after the commencement of such total continuous disability but in no event before a date more than 1 year prior to the date of receipt by the company of said notice of disability.

"(2) Monthly income to the insured.—The company will, in addition to waiving premiums, pay to the insured the monthly income specified on the 1st page hereof under the heading 'total and permanent disability benefits' during the continuance of such total disability, beginning at the end of 4 months from the commencement of such total disability."

Plaintiff became 60 years of age October 25, 1949. On September 28, 1949, he filed a claim with the company for total and permanent disability benefits under the policies, alleging total and permanent disability in August, 1948. The company denied liability whereupon plaintiff started the instant suit. It was tried before the court without a jury, and much testimony taken, resulting in entry of judgment for the plaintiff. The defendant appeals.

The substance of the controversy is whether, under the proofs adduced, the plaintiff became totally and permanently disabled before 60 years of age, within the provisions of the policies. On this appeal, having in mind that the trial court heard the case without a jury, we do not reverse on issues of fact unless the evidence clearly preponderates in the opposite

direction. In considering the facts, it is necessary to have in mind the meaning of the provisions in the policies which refer to total and permanent disability in the light of the previous decisions of this Court. The Court has consistently adhered to certain fundamental rules in construing an insurance policy. If the provisions as a whole are ambiguous or obscure, they are liberally construed in favor of the insured. Technical construction of insurance policies is not favored. *DeLand* v. *Fidelity Health & Accident Mutual Insurance Company,* 325 Mich 9; *Van Zanten* v. *National Casualty Company,* 333 Mich 28.

The policies here under examination repeatedly use the terms "total and permanent disability." Generally, there is room for a variance between a liberal interpretation of that term, as heretofore indicated in the opinions of this Court, and limitations in these policies apparently intended to restrict the benefits by defining said terms. In the case at bar, 3 of the policies read "permanently disabled or  *  *  *  incapacitated to such an extent that he  *  *  *  is rendered wholly and permanently unable to  *  *  *  perform any work for any kind of compensation of financial value." The 4th reads "to such an extent as to be incapacitated from engaging in any occupation for remuneration or profit." To what extent should the previous rules of construction announced by this Court be applied to these policies?

It is evident that the variations in result in the many cases where the Court has considered whether an insured was totally and permanently disabled within the meaning of his policy are due to differences in facts and circumstances as well as in the wording of the policies. But the rule has been well established that whether the insured was totally and permanently disabled is a question of fact. *Mellinger* v. *Prudential Insurance Company of America,* 322

Mich 596. However, no 2 circumstances are exactly alike, as presented to the Court for review.

In *Starling* v. *Supreme Council Royal Templars of Temperance,* 108 Mich 440 (62 Am St Rep 709), a life insurance policy included benefits if the insured became totally disabled for life, so as to prevent his following his own or any other avocation. The policy included among the conditions for total disability "paralysis so extensive as to produce absolute disability to follow any avocation, and which is conclusively permanent." The insured was stricken with paralysis. The trial court considered the issue of total disability to be a question of fact, and charged the jury:

"The fact that a man may carry a bucket of coal, or may carry a stick of wood, or perhaps may run a lawn mower over a lawn, will not, in itself, necessarily show that he is competent to follow some avocation. The fact that a man may work for a few moments, even though, perhaps, he may work for a few months, will not, necessarily,—it is not conclusive evidence that he can follow some avocation. But, if you find that he can perform some kind of employment,—if you find, as suggested by the counsel in this case, that he could keep a newspaper stand, or a peanut stand, or could do any work, or follow any line of employment,—why, then, gentlemen of the jury, under those circumstances, he would not be entitled to recover."

On appeal by the defendant, the judgment for the plaintiff was affirmed.

In *Turner* v. *Fidelity & Casualty Company of New York,* 112 Mich 425 (38 LRA 529, 67 Am St Rep 428), the insured, a real estate dealer and moneylender, slipped and fell, dislocating his shoulder. His accident policy was for total (but not permanent) disability, as follows:

"Loss of time, not exceeding 26 consecutive weeks, resulting from bodily injuries effected during the term of this insurance through external, violent, and accidental means, which shall, independently of all other causes, immediately and wholly disable and prevent him from prosecuting any and every kind of business pertaining to his occupation above stated."

The insured admitted that he went to his office everyday during his disability, but did not do any work—he had a man do his work for him. On the appeal, in affirming a judgment for the plaintiff, the Court said:

"We find nothing in the record which shows, or tends to show, from the testimony of the plaintiff or his attending physician, that the plaintiff was not totally disabled from attending to and prosecuting any and every kind of business pertaining to his occupation. At least, it was a question for the jury to determine."

In *Hohn* v. *Inter-State Casualty Company,* 115 Mich 79, a barber slipped and wrenched his back. The next day he went late to his place of business and did some work, but not as much as usual. The ensuing week he visited his shop each day, suffering pain, occasionally worked a little. His accident policy provided:

"If such injuries, independently of all other causes, shall immediately, continuously, and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, the company will pay."

The trial court submitted to the jury the question of fact, was he disabled and entitled to recover benefits under the policy? On appeal, the Court affirmed the judgment for the plaintiff, relying on *Turner* v. *Fidelity & Casualty Company of New York, supra.*

In *Hoffman* v. *Michigan Home & Hospital Association,* 128 Mich 323 (54 LRA 746), a disability policy had been issued to the insured which provided for sick benefits if the insured became

"totally disabled, and such disability shall, independent of all other causes, wholly and continuously disable and prevent said member from prosecuting any and all kinds of business, upon satisfactory proofs to the association of such total and continuous disability said member shall be entitled to receive at the rate of $10 per week, after the first week, during the time he is continuously confined to his bed, or continuously confined to the house, and subject to the personal calls of a registered physician."

At the trial, the plaintiff admitted that during the period of his claimed disability (*la grippe*) he had gone to Chicago and was not continuously confined to his home. The trial court charged the jury, in part:

"First, then, what is meant by the provision in this policy, 'continuously confined to the house, and subject to the personal calls of a registered physician in good standing?' * * *

"I charge you, gentlemen, that, to constitute a compliance with this provision, it is not necessary that the plaintiff should remain in the house continuously during the entire time of disability; that to step out of doors now and then, or to occasionally go to the office of his physician, would not be a violation of this clause, or defeat plaintiff's right of recovery. * * *

"So, gentlemen, I charge you that if you find from the testimony in this case that the plaintiff was continuously confined to his home on account of a sickness or disease covered by the terms of his policy, to the extent that he was necessarily, in good faith, there the larger portion of the time, and only went forth either from necessity for consultation with, or by direction of, his physician, Dr. Barth, in whose charge and care he was, if you so find, then and in

that case the plaintiff is entitled to recover for the term so continuously confined, at the rate fixed in the policy,—$10 per week."

On appeal, a majority (3) of the Court held that the question was properly tried and submitted, and affirmed the judgment for the plaintiff. It may be of some significance that in the 3–2 division of the Court the minority wrote for a less liberal interpretation of the wording of the policy on the basis of the plaintiff's own testimony. The minority wrote that after he had been confined in his house for 6 weeks he went to his physician and said:

" 'I am confined up there in that place of business, where I sleep right in the store there, and I don't think it is very healthy for me.' I said: 'I have a friend living in Chicago; he wants me to come there.' He said: 'That is all right; that won't hurt you any to go there.' He said: 'You go over there; take care of yourself over there in good shape, and you will come out all right.' I was confined there all the time, only I used to take a morning walk."

In dissenting, the minority said:

"The policy contains the contract which the parties saw fit to make, and we should not enlarge it by construction. It is obvious that during this period plaintiff was not continuously confined to the house, subject to the personal calls of a physician. It is a radically different contract from those in the cases cited."

For a decision on comparable facts which declines to follow the conclusion in the above case, see *Shirts v. Phoenix Accident & Sick Benefit Association*, 135 Mich 439. However, the above *Hoffman* and *Shirts Cases* fairly represent the difference in viewpoints which the trial court in the instant case discussed in its opinion. The court said:

"What is the meaning of 'totally and permanently disabled,' and 'incapacitated from engaging in any occupation for profit?'

"There are 3 different theories as to what 'permanently and totally' and 'from following any occupation whatsoever' means. See 149 ALR 14.

"The first group construes these terms in a strict or literal way. This construction would mean that one must be absolutely helpless to recover.

"A state of absolutely helplessness rarely exists, except in those cases in which the physical disability is accompanied by mental incapacity. It is hard to believe that an interpretation which makes this clause practically valueless was contemplated by the parties when they entered into the insurance contract.

"The second theory gives the policy a liberal interpretation and makes the definition of 'permanently and totally disabled' to apply to the insured's occupation.

"The third group is the qualified or intermediate construction. The intermediate group of authorities holds that such insuring phrase means a disability that prevents the insured from following any substantial or remunerative occupation, or from doing any labor for which he is qualified mentally and physically and by which he is able to earn a livelihood."

The court said that the question of total disability, and whether the insured can follow any occupation or employment, is a fact question for the court. The court used the language approved by this Court in *Hohn* v. *Inter-State Casualty Company, supra,* later followed and cited or quoted with approval in *Hallock* v. *Income Guaranty Company,* 270 Mich 448; *Wheeler* v. *Equitable Life Assurance Society of the United States,* 294 Mich 520; and *Besh* v. *Mutual Benefit Health & Accident Association,* 304 Mich 343.

In *Letherer* v. *United States Health & Accident Insurance Company,* 145 Mich 310, the insured had a policy indemnifying for loss of time caused by acci-

dental injury "which shall independently of all other causes and immediately following the receipt thereof wholly and continuously disable and prevent the assured from performing any and all duties pertaining to any business or occupation." The insured was injured on October 2d by falling and striking against a scantling. Although in pain, he continued to do his work as the engineer in a cider mill until October 9th when he left, after a disagreement with his employer, without telling his employer of any injury. He then worked 2 or 3 days building a summer kitchen, then dug potatoes 2 or 3 days. The jury found for the plaintiff, and on appeal this Court reversed without a new trial, saying that the trial court should have directed a verdict for the defendant. Obviously, the decision indicates that liberality in construing disability benefits in favor of the insured reaches a limit when it would require ignoring completely the plain facts in the case.

In *Brod* v. *Detroit Life Insurance Company,* 253 Mich 545, the company had issued a life insurance policy, with added benefits if the insured became totally and permanently disabled so as to be "permanently, continuously and wholly prevented thereby for life from performing any work for compensation, gain or profit, or from following any gainful occupation." Holding that the testimony raised an issue of fact, on appeal the Court affirmed judgment for the company on the ground that the proofs failed to show the disability was permanent.

In *Forman* v. *New York Life Insurance Company,* 267 Mich 426, a life insurance policy included disability benefits if the insured became "wholly disabled by bodily injury or disease so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit." On appeal, a judgment for the plaintiff was affirmed, where the proofs

showed that the insured had a disease and the medical testimony showed "that plaintiff could not pursue any suggested vocation with a reasonable degree of regularity or length of time and without hazard of relapse. The doctors opined that plaintiff is not able to engage in any occupation for gain except under circumstances so favorable and fortuitous as to be without the range of probabilities."

In *Hallock* v. *Income Guaranty Company, supra,* the insured, an attorney, had a policy which provided for monthly benefits "for the period of continuous total disability, resulting from bodily disease, during which the insured should be necessarily and continuously confined within the house." He had visited his office during the period of claimed disability, went to the doctor's office, and also remained in a hospital for some time. On the appeal, the Court said:

"We believe the testimony fully supports the finding of the trial judge that on the 28th day of February, 1933, plaintiff was suffering from a disease and illness which totally incapacitated him from carrying on his business. He was unable to perform the essential acts necessary to the exercise of his profession. This constitutes total disability."

In *Wheeler* v. *Equitable Life Assurance Society of the United States, supra,* the insured brought suit to recover the amount claimed under a provision in an insurance policy. In the trial court it was shown that he had tuberculosis, and the court found that he was totally and permanently disabled prior to August 1, 1935, although he continued to do work as a salesman for his employer until November, 1935. In affirming a judgment for the plaintiff, the Court said:

"But the mere fact that an insured carried on his work to some extent after a certain date does not, under the usual legal definition of total and perma-

nent disability, conclusively indicate that he was not permanently and totally disabled as of that date."

In the case at bar the trial court, hearing the case without a jury, used as a yardstick in applying the law to the facts and circumstances, this Court's decisions in the *Hohn, Hallock, Wheeler* and *Besh Cases, supra.** The trial court, in an exhaustive opinion, after first discussing the law, wrote that the above decisions state the law in Michigan relative to permanent and total disability. We agree with the conclusion.

It remains only to consider whether the facts bring the instant case within the conclusion of the trial court. We do not reverse unless the evidence clearly preponderates in the direction opposite to the finding of the trial court. The insured was an undertaker in St. Johns, Clinton county, population about 5,000. He began the business there in 1923. He had to do most of his own work. In 1936 or soon thereafter his son became a licensed embalmer and became active in the business with his father. In 1939 the insured was hospitalized due to an injury to his back, in an automobile accident. He suffered a fracture of left 2d to 8th ribs and resulting arthritis involving the 5th to 8th dorsal vertebrae. He had bony arthritis, called hypertrophic, a "spurring" of the spine, which grew progressively worse and became permanent and painful. His condition was diagnosed as hypertrophic arthritis. He could not continue his daily work, embalming and lifting, in order to run the business. He still could do some light work, but there was no work elsewhere of any financial value. He had given up the funeral business to his son. The insured could not operate the undertaker business.

* *Hohn* v. *Inter-State Casualty Company,* 115 Mich 79; *Hallock* v. *Income Guaranty Company,* 270 Mich 448; *Wheeler* v. *Equitable Life Assurance Society of the United States,* 294 Mich 520; *Besh* v. *Mutual Benefit Health & Accident Association,* 304 Mich 343.

About 1939 plaintiff bought some farms and looked after them until 1947 when he sold them. From 1945 to 1950, while his son operated the undertaker business, plaintiff was "going behind" and consuming his capital. His son left the business and the insured sold it. Since 1947 he engaged in no gainful occupation, and has done practically no work, except to act as a bank director and look after his investments. He constantly suffered pain. The medical testimony established that his disability was total and permanent, that he not only could not perform any substantial part of the undertaker business, but also that his condition was such that he could not perform any other work for remuneration. The trial court concluded:

"My best judgment is that the plaintiff is, by a preponderance of the evidence, permanently and totally disabled, and is entitled to recover under the disability benefits of the policies, plaintiff's exhibits 1, 2, 3 and 4."

The defendant produced proofs from which a contrary conclusion could have been drawn. The insured had been going to California every winter and drove his own automobile part of the time. He still drives some. In 1947 he sold his farms at a profit. He acted as a bank director, continued to attend Rotary, lodge and church. He could do light manual work. He was "a retired businessman." He made his own investments, for income or profit. Defendant's examining physician disagreed with the medical testimony of the insured.

No benefit could result from a detailed reconstruction of the 230 printed pages of testimony and exhibits considered by the trial court. The case was well tried and has been efficiently briefed by counsel for both parties. The question involves troublesome issues of law and fact, but the evidence does not

clearly preponderate in a direction opposite to the findings of the trial court and the court correctly applied the law.

Affirmed.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.