Judith Lee **GOLDSTEIN, Personal Representative of the Estate of Aaron A. Goldstein, Deceased, and Triad Associates, P.C., a Michigan professional corporation, Plaintiffs,**

v.

**LINCOLN NATIONAL LIFE INSURANCE COMPANY, a foreign corporation, Defendant.**

Civil Action No. 96–40436.

United States District Court, E.D. Michigan, Southern Division.

July 9, 1997.

Robert E. Kass, Dennis M. Barnes, Barris, Sott, Denn & Driker, Detroit, MI, for Plaintiffs.

Stanley A. Prokop, Plunkett & Cooney, Detroit, MI, for Defendant.

---

**MEMORANDUM OPINION AND ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT**

GADOLA, District Judge.

Before the court are cross–motions for summary judgment pursuant to Federal Rule Civil Procedure 56. Plaintiffs, Judith Lee Goldstein ("Judith Goldstein") and Triad Associates, P.C. ("Triad") and defendant Lincoln National Life Insurance Company ("Lincoln National") filed their respective motions on September 30, 1996.[1] Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Nov. 7, 1994), this court will dispense with oral argument and determine the instant motions on the briefs filed. For the reasons set forth below, this court will deny the cross-motions for summary judgment.

**Background**

This is a breach of contract action involving an insurance policy issued by defendant Lincoln National. Plaintiff Judith Goldstein is the widow and the designated personal representative of Dr. Aaron Goldstein ("Aaron Goldstein" or "Dr. Goldstein"), the named insured in the policy. Triad is the successor in interest to Triad Mental Health Associates, the original owner of the policy. At the time of his death, Dr. Goldstein was an officer and director of Triad, and he owned fifty percent of the shares of Triad stock. Also, Dr. Goldstein was employed by Triad as a practicing clinical psychologist and had administrative duties relating to the operation of the Triad Mental Health Clinic. In November of 1983, Lincoln National issued to Triad Mental. Health Associates, a disability "buy–out" insurance policy, # 70–4157429 (the "Lincoln National policy" or the "Policy"), naming Aaron Goldstein as the insured and Triad Mental Health Associates as the owner. Triad acquired the Lincoln National policy for the purpose of funding its obligation to purchase Dr. Goldstein's interest in Triad which would arise in the event of Dr.

---

1. This action originally was filed in Oakland County Circuit Court by Judith Goldstein, a Michigan resident, against Lincoln National, an Indiana corporation with its principal place of business in Indiana, and Triad, a Michigan corporation with its principal place of business in Michigan. Subsequently, the parties realigned and Triad joined Judith Goldstein as a plaintiff. Lincoln National then removed the suit to Federal District Court based on diversity jurisdiction. The case was originally assigned to the Honorable Judge Bernard A. Friedman, who subsequently disqualified himself, and the case was transferred to this court on December 13, 1996.

Goldstein's death or disability. The policy remained in force from 1983 through October 3, 1994. The total amount of the benefits payable under the Lincoln National policy in the event of Aaron Goldstein's total disability is $144,000 (36 monthly indemnity payments of $4,000). The Lincoln National policy contains the following relevant provisions. At page 4, under "Definitions," "Total Disability" is defined as follows:

> The term Total Disability whenever used in this Policy means the complete inability of the Insured to engage in the Insured's regular occupation.

At page 5 of the policy, under "Benefit Provision," the policy reads as follows:

> If Such Injury or Such Sickness results in continuous Total Disability of the Insured which commences while this Policy is in force and requires the attendance of a licensed physician other than the Insured and other than the Owner, the Company will pay the Monthly Indemnity periodically, commencing with the first day of continuous Total Disability following the Waiting Period[2], for a period equal to the Maximum Indemnity Period.

Finally, at page 6, the policy contains the following language:

> Notice of Claim. Written notice of claim must be given to the company within twenty days after the occurrence or commencement of any disability or loss covered by this policy, or as soon thereafter as is reasonably possible. After notice of the claim has been given as herein required, notice of continuance of disability shall be given to the company at intervals of not more than six months (excluding any period for which proof of disability has been furnished or payment of indemnity made or liability denied by the company) except in case of legal incapacity. Delay in giving of such notice shall not impair the owner's right to any indemnity which would otherwise have accrued during the period of six months preceding the date on which such notice is actually given.

On March 17, 1993, Dr. Goldstein was diagnosed with acute promyelocitic leukemia. On April 13, 1993, Triad sent Lincoln National a written notice of claim for the disability of Aaron Goldstein. Lincoln National then sent a claim form to Dr. Goldstein, along with a description of occupation form. Lincoln National alleges that no forms were returned and no further communication was had by Lincoln National with Dr. Goldstein or Triad until early 1994. From April 1993 until April 1994, Dr. Goldstein was treated with a series of chemotherapies. While the parties disagree as to the quality and quantity of work performed by Dr. Goldstein during this time and its significance relative to the disability claim, they do agree that he did continue to work in some capacity at various intervals subsequent to Triad's application for disability benefits.

In early 1994, pursuant to its investigation of Triad's claim, Lincoln National contacted Triad requesting information regarding the business activity of Dr. Goldstein after March 17, 1993, the beginning of his illness. David Stanislow ("Stanislow"), Dr. Goldstein's business partner and the only other shareholder in Triad, responded to the request on April 21, 1994 by submitting Dr. Goldstein's billings and collections from March 13, 1993 through the end of March 1994. They show total billings attributed to Dr. Goldstein during that period of $69,659.16. Stanislow states that except for the months of August through December, 1993, when Dr. Goldstein was practicing from the clinic's Birmingham office, the sessions that were billed were telephone sessions.

Stanislow also explains in his letter that Dr. Goldstein's responsibilities at Triad included not only the practice of out–patient psychotherapy, but also administrative responsibilities as Clinical Director and co–owner of the clinic. Stanislow advises that Dr. Goldstein's administrative responsibilities generally diminished from the onset of his illness, but increased during the months of August through November 1993 to about "a third or one half of what ordinarily would

---

**2.** The "Waiting Period" is a one year period after onset of total disability during which no benefits are payable.

have been the case prior to his illness." Then in the last few months that he worked, Stanislow asserts, "Dr. Goldstein's participation [was] primarily that of receiving information."

Stanislow's deposition testimony further clarifies Dr. Goldstein's business activities during the time he was being treated for his illness. Stanislow explained that as Clinical Director of Triad, Dr. Goldstein had primary responsibility for operating the Utilization Review Committee, which met at least one time per week to review patient care with each of Triad's 16–17 therapists. After the onset of his illness, however, Dr. Goldstein never attended another Utilization Review Committee meeting, and never signed off on another patient treatment plan. According to Stanislow, this was because "He was not at the clinic for most of that time, and he was not well enough during the remainder of it."

Stanislow also stated that he and Dr. Goldstein were both responsible for the administrative side of the business. Together, they constituted Triad's Executive Committee, which held weekly meetings to make decisions about running the clinic. According to Stanislow, however, after the onset of his illness, Dr. Goldstein did not effectively participate in the administration of the business, attending only two Executive Committee meetings after March 17, 1993, one of which was held in the hospital and lasted only 30 minutes and another which he left after 30 minutes because he was tired. Further, Dr. Goldstein did not attend meetings of any of the eight other Triad committees of which he was a member after March 17, 1993. Finally, Stanislow stated that from and after March 17, 1993, Dr. Goldstein received no salary from Triad.

In April 1994, Dr. Goldstein received a bone marrow transplant and then ceased all work–related activities. This treatment as well as the subsequent chemotherapy proved to be ineffective. On September 28, 1994, Dr. Goldstein submitted a Proof of Loss Monthly Income Claimants Statement to Lincoln National. The Proof of Loss form asserts that Dr. Goldstein was totally disabled from March 17, 1993 until September 28, 1994. Dr. Goldstein also drafted a docu-ment entitled "Attachment to proof of loss monthly income claimant statement and description of occupation," answering specific questions indicating that he had counseled with patients on an intermittent basis from May of 1993 until July of 1993 by telephone and that at the end of July 1993, he returned to his office on a number of occasions through November of 1993. He further stated that he was severely limited in performing all of his occupational duties due to extreme fatigue, inability to concentrate, inability to handle stress, pain, and the side effects of leukemia. Finally, Dr. Goldstein's attending physician submitted to Lincoln an Attending Physician Statement, dated September 27, 1994, in which she documented her medical opinion that Dr. Goldstein was totally disabled since his illness was first diagnosed in March 1993.

Aaron Goldstein died on October 3, 1994. Lincoln National rejected the application for benefits under the Lincoln National policy and denied any liability thereunder. Thereafter, plaintiff initiated this action.

## Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non–moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or

make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non–moving party." *Id.* Accordingly, where a reasonable jury could not find that the non–moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non–moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non–moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non–moving party for a jury to return a verdict for that party. If the [non–moving party's] evidence is merely colorable, or is not significantly probative, *summary* judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non–moving party must do more than raise some doubt as to the existence of a fact; the non–moving party must produce evidence

that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

## Discussion

■ The arguments in this case turn on the definition of "Total Disability" in the Lincoln National policy. Specifically, the arguments center on interpretation of the policy language, "complete inability of the Insured to engage in the Insured's regular occupation." Defendant argues that the plain language of the policy is unambiguous and clearly means that if Dr. Goldstein could perform *any aspect* of his regular occupation, he did not have a "complete inability" to engage in his regular occupation. Defendant contends that since the evidence shows that Dr. Goldstein did perform essential aspects of his job between March 17, 1993 and April 1994 and then died within the one–year waiting period following his cessation of all work activities in April 1994, summary judgment must be granted in favor of Lincoln National.

Plaintiffs argue that because the policy does not specifically define "totally disabled" as meaning an inability to engage in *any aspect* of the insured's regular occupation, to construe the language as being so specific would be contrary to Michigan law. Rather, plaintiffs argue that, in the absence of such specific language to the contrary, under Michigan law the phrase "complete inability" should be construed to mean the insured's complete inability to perform the substantial and material duties of his occupation in his usual and customary manner. Plaintiffs assert that under such a definition, the undisputed facts show that Dr. Goldstein was totally disabled and so summary judgment in their favor is appropriate.

While there are no Michigan cases which specifically interpret the "complete inability" language found in the Lincoln National policy, the Sixth Circuit has stated that under Michigan law, "[a]n insurer has a duty to express clearly the limitations of its policy; any ambiguity will be construed liberally in favor of the insured and *strictly* against the insurer." (citations omitted) (emphasis in

original). *Ford Motor Credit Co. v. Aetna Casualty and Surety Co.*, 717 F.2d 959, 961 (6th Cir.1983). Moreover, the Michigan Supreme Court has held that a technical construction of policy language which could defeat the reasonable expectation of coverage is not favored. *Crowell v. Federal Life and Casualty Company*, 397 Mich. 614, 623, 247 N.W.2d 503 (1976), citing *Ebert v. Prudential Insurance Company of America*, 338 Mich. 320, 325, 61 N.W.2d 164 (1953). In *Chalmers v. Metropolitan Life Insurance*, 86 Mich. App. 25, 31–32, 272 N.W.2d 188 (1978), the court cited a number of cases decided by the Michigan Supreme Court concerning the subject of "total disability," including *Ebert*, and stated that:

> We recognize that the language of the insurance policies involved in the Michigan cases tends to vary[ ], but within those varying provisions, the Michigan Court has indicated a strong commitment to a liberal construction of such insurance policies that does not permit defeat of a reasonable expectation of payment of benefits.

A number of those Michigan Supreme Court cases cited in *Chalmers*, in turn, relied upon *Turner v. Fidelity & Casualty Co.*, 112 Mich. 425, 70 N.W. 898 (1897). In *Turner*, the Michigan Supreme Court considered a policy providing indemnity against accidents which "immediately and wholly disable and prevent [the insured] from prosecuting any and every kind of business pertaining to his occupation above stated." The *Turner* Court explained that there is a difference between an insured being able to perform *any* part of his business and *any and every kind* of business pertaining to his occupation. The Court used the following illustration:

> "Suppose a barber, who can use his razor and shears in his right hand only, and can use his left to wipe his customer's face, comb and dress his hair, and receive and make change, by an accident is wholly deprived of the use of his right hand, so that he can neither shave his customer nor cut his hair, can it be said that he is not wholly disabled from prosecuting business as a barber?"

*Id.* at 429, 70 N.W. 898 (quoting citation omitted) The *Turner* court went on to say:

> If [the] language in the policy is ambiguous and susceptible of two constructions, then the question must be solved in favor of the insured; for it is well settled in this state that where a stipulation or exception to a policy, emanating from the insurer, is capable of two meanings, the one is to be adopted which is the most favorable to the insured. . . .

*Id.*

The *Turner* court found that the question of whether the plaintiff was entitled to benefits under the policy was a question of fact for the jury. *See also Hohn v. Casualty Company*, 115 Mich. 79, 72 N.W. 1105 (1897) (affirming judgment that barber with back injury was totally disabled despite resumption of some work under policy language covering injuries which "wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation.")

Citing the Michigan precedents discussed above, plaintiffs contend that the policy language: "complete inability of the Insured to engage in the Insured's regular occupation," could reasonably be interpreted to mean the insured's inability to perform *any* aspect of his regular occupation rather than to mean the insured's inability to perform *any and every* aspect of his regular occupation. In the face of such an ambiguity, plaintiffs argue, the language must be construed in favor of the insured.

Defendant argues that the Michigan precedent discussing a strong commitment to liberal interpretation of insurance policies, technical constructions being disfavored and construing ambiguities in favor of insureds, is inapplicable here because these cases do not address the same language as that of the Lincoln National policy concerning "total disability." Unlike the language discussed in those cases, defendant argues, the language of the Lincoln National policy is unambiguous and susceptible of only one interpretation, that being: as long as an insured can perform *any* aspect of his regular occupation, he is not disabled.

This interpretation, however, is not convincing in light of the above Michigan case

law and the Sixth Circuit's finding in *Ginsburg v. Insurance Company of North America*, 427 F.2d 1318 (6th Cir.1970).[3] In *Ginsburg*, the Court considered a disability insurance policy with language very similar to that being discussed here.[4] The District Court in *Ginsburg* had granted a disability insurer's motion for judgment notwithstanding a jury verdict for a nurse–anesthetist who received back injuries in an automobile accident. The Sixth Circuit, however, reversed, holding that the jury's verdict was supported by sufficient evidence that she sustained a "continuous total disability" and that she was "permanently and totally disabled." The Court explained:

> [A]ppellee further contends that plaintiff did not prove that she was unable to perform "every duty of [her] occupation." Appellee's contention is that since there were some tasks a nurse–anesthetist must perform which appellant could admittedly perform, then she was not disabled under the terms of the policy. We think that this contention strains both the policy language and common sense. We believe that the proper construction is that she may recover if she is unable to perform the duties substantially required for her to obtain employment as a nurse–anesthetist ... Since there was at least one essential task which appellant could not perform, she could not perform "every duty."

*Id.* at 1321.

■ This court will construe the language of the Lincoln National Policy similarly. Thus, Dr. Goldstein could be found to be "totally disabled" if he could not perform the duties substantially required of him in his regular occupation. Given the various evidence of Dr. Goldstein's business activities during his illness and the parties' differing interpretations of that evidence, there clearly exists a genuine issue of material fact as to whether Dr. Goldstein performed the duties substantially required of him in his regular occupation and therefore, whether he was "totally disabled" under the policy.[5] Accordingly, summary judgment is inappropriate for either party.

Although defendant makes two other arguments for a grant of summary judgment in its favor, neither of them is persuasive. First, defendant argues that even if it were true that the insured, at some time, was totally disabled, the one year waiting period, set forth in the Lincoln National policy, never did expire. Defendant contends that even if we were to say that Dr. Goldstein became totally disabled on March 17, 1993, the fact that he began working again in the summer of 1993 meant that a new one year waiting period would then begin when he became disabled again. That date, according to defendant, would be March of 1994, when Dr. Goldstein stopped billing clients. The one year waiting period beginning at that point would not expire until April, 1995, long after Dr. Goldstein's death.

In light of the interpretation of "totally disabled" this court discussed above, defendant's argument does not weigh in favor of summary judgment. The question of whether or not Dr. Goldstein's business activities during his illness were sufficient to break the continuity requirement of the insurance policy is, like the question of whether his business activities meant he was not "totally disabled," one of fact for the jury.

---

**3.** Although *Ginsburg* was on appeal from the United States District Court for the Eastern District of Kentucky, in the part of the decision being referenced here no Kentucky law was cited or relied on. The Court specifically relied only on "the policy language and common sense." *Ginsburg*, 427 F.2d at 1320.

**4.** The policy in *Ginsburg* defined "continuous total disability" as "the Insured's complete inability during the first year thereof to perform every duty of his occupation." It defined "permanently and totally disabled" as "the Insured's complete inability ... to engage in an occupation or employment for which the Insured is fitted by reason of education, training or experience for the remainder of his life." 427 F.2d at 1320.

**5.** Although plaintiffs make an additional argument that Dr. Goldstein's work–related activities after May 1993 were for therapeutic purposes, the evidence offered in support of this contention, namely a letter from his attending physician dated September 27, 1994, is ambiguous as to whether his return to work at various intervals during his illness was part of a treatment plan. Thus, this also presents a genuine issue of material fact for the fact finder.

Defendant's last argument is that by not renewing their claim for benefits every six months, as required by the Lincoln National policy, plaintiffs breached the policy and thus are precluded from recovery. As plaintiffs point out, however, even if such a claim had any merit, Lincoln National waived any right it may have had to deny liability on such grounds when it did not specify those grounds as a basis for denial of coverage. In *Smith v. Grange Mutual Fire Insurance Co.,* 234 Mich. 119, 208 N.W. 145 (1926), the court stated that:

> This court has many times held, and it must be accepted as the settled law of this State, that, when a loss under an insurance policy has occurred and payment refused for reasons stated good faith requires that the company shall fully apprise the insured of all of the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice.

*Id.,* at 122, 208 N.W. 145.

While defendant asserts that the notice provision contains "substantive rights by way of written, contract" and thus is not subject to the general rule of waiver, defendant cites no case law, and this court was unable to locate any case law, to support this contention. It is not at all clear that such a provision falls outside the scope of the general waiver rule.[6] Accordingly, this argument does not weigh in favor of summary judgment for Lincoln National.

In sum, since there exists a genuine issue of material fact concerning whether or not Dr. Goldstein was "totally disabled" under the terms of the Lincoln National policy and no alternative grounds for finding that either party is entitled to summary judgment, this court will deny both parties' motions for summary judgment.

### ORDER

**THEREFORE IT IS HEREBY ORDERED** that plaintiffs', JUDITH LEE GOLDSTEIN and TRIAD ASSOCIATES, P.C., motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, is **DENIED.**

**IT IS FURTHER HEREBY ORDERED** that defendant's, LINCOLN NATIONAL LIFE INSURANCE COMPANY, motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, is **DENIED. SO ORDERED.**

---

6. Plaintiffs contend that, in any event, the notice provision has been satisfied. Plaintiffs' reason that since there is no requirement that the six month notice be in writing and since Lincoln National was aware of the continuation of Dr. Goldstein's disability subsequent to Triad's initial claim by virtue of the parties and their representatives continuing exchange of phone calls and correspondences regarding Dr. Goldstein's condition, Lincoln National had notice under the policy of Dr. Goldstein's continuing disability. Defendant asserts, on the other hand, that there was no communication between the parties from April 1993 to April 1994. No affidavits or deposition testimony, however, was offered by either party to support their positions on this point. Therefore, there may be, provided proper factual support is developed by both parties, a question of fact as to this issue.