CHALMERS v METROPOLITAN LIFE INSURANCE COMPANY

Docket No. 78-1124. Submitted July 6, 1978, at Detroit.—Decided September 21, 1978. Leave to appeal denied, 406 Mich —.

Plaintiff Raymond Chalmers was employed by defendant General Motors Corporation as an airplane pilot. Plaintiff suffered a heart attack and his pilot's license was permanently suspended as a result. Plaintiff thereafter claimed benefits under an extended disability benefit section of a group insurance policy issued by defendant Metropolitan Life Insurance Company for the reason that he was totally disabled to perform his job as pilot. Metropolitan Life denied the benefits on the basis that, although plaintiff is no longer able to get a pilot's license, there are many jobs that he is physically qualified to do. Plaintiff then brought suit for the benefits. The Wayne Circuit Court, Horace W. Gilmore, J., granted a partial summary judgment to the plaintiff against defendant Metropolitan Life only for benefits payable as of that time based on a finding that the plaintiff was totally disabled within the meaning of the language of the insurance policy. Defendant Metropolitan Life Insurance Company appeals. *Held:*

The record indicates that the plaintiff is totally disabled from pursuing his former occupation of airplane pilot and that all significant education, training and experience accumulated by plaintiff was geared to his preparation for the specialized occupation of airplane pilot. This was the particular occupation for which the plaintiff is reasonably qualified. Therefore, the trial court did not err in awarding the plaintiff a partial summary judgment where such holding was based on the court's findings that the plaintiff was totally disabled so as to be unable to engage in any occupation or employment for which he was reasonably qualified by education, training or experience, and thus the plaintiff was totally disabled under the terms of the insurance policy's disability provision.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur 2d, Insurance §§ 1490, 1606 *et seq.*, 1879 *et seq.*

[2, 4, 5] 44 Am Jur 2d, Insurance §§ 1490, 1606 *et seq.*

[3, 4, 6] 43 Am Jur 2d, Insurance §§ 257-277.

1. APPEAL AND ERROR—INSURANCE—SUMMARY JUDGMENT—TOTAL
   DISABILITY—REASONABLY QUALIFIED FOR EMPLOYMENT.

   A trial court did not commit clear error, in an action to recover
   benefits under the extended benefit section of a group insur-
   ance policy, in deciding that the plaintiff was entitled to partial
   summary judgment for benefits payable as of that time where
   such decision was based on the finding that the plaintiff was
   totally disabled from pursuing his former occupation of air-
   plane pilot within the meaning of the policy language defining
   total disability as being unable to engage in any gainful occupa-
   tion or employment for which one is reasonably qualified by
   education, training or experience, and where the trial court
   found that all significant education, training and experience
   accumulated by plaintiff was geared to his preparation for the
   specialized occupation of airplane pilot and that, therefore, this
   was the particular occupation for which the plaintiff was rea-
   sonably qualified.

2. INSURANCE—CONSTRUCTION OF POLICY—TOTAL DISABILITY—ELE-
   MENTS—QUALITY—QUANTITY.

   Two elements are involved in defining "total disability" as the
   term is used in disability provisions of an insurance contract:
   first, the element of quality involves the question of whether
   the insured must be unable to work in his particular occupa-
   tion, or whether he must be unable to work in other occupa-
   tions as well, and second, the element of quantity which is
   concerned with the amount of work an insured can be capable
   of performing and still be considered totally disabled.

3. INSURANCE—CONSTRUCTION OF POLICY—DISABILITY PROVISIONS—
   AMBIGUITY—GENERAL RULE—INTERPRETATION—ORDINARY BUSI-
   NESS MAN.

   The general rule regarding the interpretation of disability provi-
   sions in insurance policies provides that the disability provi-
   sions are to be given a reasonable, rather than a literal,
   construction, and, if ambiguous, are to be construed in favor of
   the insured; however, the court cannot make a new contract for
   the parties, and if there is no ambiguity, neither party will be
   favored; the guide in construing disability provisions is the
   interpretation which would be given them by the ordinary
   business man, or by a reasonable person in the position of the
   insured.

4. INSURANCE—CONSTRUCTION OF POLICY—AMBIGUITY—REASONABLY
   QUALIFIED—GENERAL RULE.

   Sufficient ambiguity exists as to the meaning of the term "reason-

ably qualified" which is contained in an extended disability benefit provision of an insurance contract to bring that provision within the general rule, which provides that such provision be construed in favor of the insured where the policy provides that a person is totally disabled if he is unable to engage in any gainful occupation or employment for which he is reasonably qualified by education, training or experience, and where the words any gainful occupation or employment are modified by the clause, and limited to those occupations, for which he is reasonably qualified by education, training or experience.

5. INSURANCE—CONSTRUCTION OF POLICY—TOTAL DISABILITY PROVISIONS—THREE VIEWS.

The three views relating to the interpretation of total disability provisions in insurance policies are: (1) the extreme view in favor of the insured that total disability exists whenever the insured is unable to perform the duties of his particular occupation, (2) the extreme view in favor of the insurer that total disability exists only when there is incapacity to pursue any occupation whatever, and (3) the intermediate view which regards total disability as a relative term, which rejects both of the two extreme views and which employs differing language to explain the degree of incapacity required to constitute total disability; Michigan cases have followed the intermediate view.

6. INSURANCE—AMBIGUITIES IN POLICY—SUPREME COURT—LIBERAL CONSTRUCTION—REASONABLE EXPECTATIONS OF INSURED—BENEFITS.

The Michigan Supreme Court has indicated a strong commitment to a liberal construction of insurance policies containing ambiguities which does not permit the defeat of an insured's reasonable expectation of payment of benefits.

*Levin, Levin, Garvett & Dill* (by *David A. Goldman),* for plaintiff.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Michael G. Vartanian),* for defendant.

Before: N.J. KAUFMAN, P.J., and BEASLEY and P.R. MAHINSKE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

BEASLEY, J. After long service as an airplane pilot for General Motors Corporation, plaintiff suffered a severe heart attack on January 17, 1971. Although he recovered, his pilot's license was permanently suspended as a result of the heart attack. Plaintiff claimed benefits under an extended disability benefit section of a group insurance policy[1] issued by defendant Metropolitan Life Insurance Company for the reason that he is totally disabled to perform his job as an airplane pilot. Defendant denied extended disability benefits on the basis that, although plaintiff is no longer able to get a pilot's license, there are many jobs that he is physically qualified to do. After plaintiff filed suit, both parties moved for summary judgment. The trial court granted plaintiff a partial summary judgment for benefits payable as of that time based on a finding that plaintiff was totally disabled within the meaning of the language of the insurance policy. Defendant appeals as of right.

The sole issue for our consideration is whether the trial court erred in deciding that plaintiff was entitled to partial summary judgment on the basis that he was totally disabled under the terms of the insurance policy even though he was, and is, physically qualified to do some jobs.

[1] The insurance policy here in question provided so-called Sickness and Accident Benefits for a maximum period of 12 months, which defendant paid plaintiff. The subject policy also provided for payment of extended disability benefits commencing on termination of the sickness and accident payments; it is payment of the extended disability payment that is here in dispute. For one year after his heart attack, plaintiff received his full salary from his employer, General Motors Corporation, and he receives retirement benefits. Also, for a period of about four years, plaintiff received substantial benefits from defendant under a so-called loss of pilot's license insurance policy.

Plaintiff's claims against defendant General Motors Corporation have not yet been litigated. The summary judgment runs only against defendant Metropolitan Life Insurance Company; thus, only defendant Metropolitan Life Insurance Company appeals. In this opinion, defendant means Metropolitan Life Insurance Company.

Essentially, the question here involves interpretation of the disability provisions of the group life insurance policy issued by defendant. The key provision in the policy reads:

"If, while insured * * * the Employe is both under age 65 and *totally disabled so as to be unable to engage in any gainful occupation or employment for which he is reasonably qualified by education, training or experience,* the amount of Extended Disability Benefit Insurance (Monthly Benefits) then in force on account of the Employe shall be paid to the Employe each month during the period the Employe is so disabled, as set forth herein." (Emphasis added.)

Generally, two aspects or elements are involved in defining "total disability". First, there is the element of *quality,* which involves the question of whether the insured must be unable to work in his particular occupation, or whether he must be unable to work in other occupations as well. Then, there is the element of *quantity,* which is concerned with the amount of work an insured can be capable of performing and still be considered "totally disabled", that is, whether the insured need be absolutely helpless, or whether he may be able to perform minor acts only, or whether he may be able to perform substantial acts.[2]

It should be noted that since plaintiff in the instant case is one hundred percent disabled from performing within his former occupation of airplane pilot, the question of what quantity of work he is capable of performing within his given occupation is not at issue. The question is: Does the fact that plaintiff could possibly pursue some occupations other than that of licensed airplane pilot

---

[2] 21 ALR3d 1155, 1158–1159.

precluded a conclusion that he is totally disabled as the term is used in the insurance policy?

The rule for interpretation of disability provisions in insurance policies has been stated:

"As a general rule the disability provisions are to be given a reasonable, rather than a literal, construction, and, if ambiguous, are to be construed in favor of insured; but the court cannot make a new contract for the parties, and, if there is no ambiguity, neither party will be favored. The guide in construing disability provisions is the interpretation which would be given them by the ordinary business man, or by a reasonable person in the position of insured." 45 CJS 1103–1104. (Footnotes omitted.)

There is an ambiguity in the provision in dispute in the instant case sufficient to bring the provision within the general rule quoted above. The policy provides that a person is totally disabled if he is unable to engage in any gainful occupation or employment for which he is *reasonably qualified* by education, training or experience. Careful reading indicates the policy language covers "any gainful occupation or employment" but that the words "any gainful occupation or employment" are modified by the clause, and limited to those, "for which he is reasonably qualified by education, training or experience". Thus, the ambiguity arises from and the question then is as to the meaning, under the policy, of "reasonably" qualified.

In general, there are three views relating to the interpretation of "total disability" provisions in insurance policies. They are:

1) the *extreme view in favor of the insured* that total disability exists whenever the insured is unable to perform the duties of his particular occupation;

2) the *extreme view in favor of the insurer* that total disability exists only when there is incapacity to pursue any occupation whatever, and

3) the *intermediate view,* which regards total disability as a relative term, which rejects both of the two extreme views and which employs differing language to explain the degree of incapacity required to constitute total disability.[3] We interpret the Michigan cases[4] to follow the so-called intermediate view.

In *Ebert v Prudential Ins Co of America,*[5] the Michigan Supreme Court utilized the above terminology and affirmed a judgment in favor of plaintiff who was an undertaker. The evidence indicated that plaintiff injured his back in an automobile accident suffering what was described as hypertrophic arthritis. The Court said that while he could do some light work he could not perform the embalming and lifting required of an undertaker. The Court concluded that he was permanently and totally disabled so as to be entitled to benefits under a provision contained in his life insurance policies. The *Ebert* Court made it clear that where there is ambiguity, insurance policies are to be liberally construed in favor of the insured. Technical construction to defeat claims is not favored.

We recognize that the language of the insurance policies involved in the Michigan cases tends to vary,[6] but within those varying provisions, the

[3] *Id.* at 1161; *See also,* 21 ALR3d 1383, 1393–1394.

[4] *Crowell v Federal Life & Casualty Co,* 397 Mich 614; 247 NW2d 503 (1976), *Ebert v Prudential Ins Co of America,* 338 Mich 320; 61 NW2d 164 (1953), *Besh v Mutual Benefit Health & Accident Ass'n,* 304 Mich 343; 8 NW2d 91 (1943), *Wheeler v Equitable Life Assurance Society of the United States,* 294 Mich 520; 293 NW 735 (1940), *Hallock v Income Guaranty Co,* 270 Mich 448; 259 NW 133 (1935), *Hohn v Inter-State Casualty Co,* 115 Mich 79; 72 NW 1105 (1897).

[5] 338 Mich 320, 330; 61 NW2d 164 (1953).

[6] See Michigan cases cited in footnote 4.

Michigan Court has indicated a strong commitment to a liberal construction of such insurance policies that does not permit defeat of a reasonable expectation of payment of benefits. See, *Crowell v Federal Life & Casualty Co.*[7]

Applying that view to the facts of the instant case, we note that the record reveals beyond dispute that plaintiff is totally disabled from pursuing his former occupation of airplane pilot. There is considerable evidence of record to indicate that all significant education, training and experience accumulated by plaintiff was geared to his preparation for the specialized occupation of airplane pilot. It is this particular occupation for which plaintiff is reasonably qualified.

Defendant argues that prior to his heart attack plaintiff had experience in sales and aviation-related jobs such as maintenance, scheduling and flight operations. Defendant says this experience compels the conclusion that plaintiff is reasonably qualified for such jobs and that, therefore, since plaintiff is now physically capable of doing that kind of work, he is *not* totally disabled within the meaning of the term as delineated in the insurance policy. In support of this argument, defendant cites *Przbylinski v Standard Pressed Steel Co.*[8]

In *Przbylinski,* this Court affirmed a directed verdict for defendant where plaintiff failed to offer evidence that "he suffered a disability which prevented him from engaging in any occupation for which he was reasonably fitted" and also failed to offer evidence that he was being treated by a physician for the disability as required under that insurance policy. In fact, the evidence showed that plaintiff, a supervisor, believed he was still physi-

[7] 397 Mich 614; 247 NW2d 503 (1976).
[8] 62 Mich App 461; 233 NW2d 614 (1975).

cally able to do the work and did similar work for another employer for 4-1/2 months subsequent to his alleged disablement. We conclude *Przbylinski* is, on its facts, readily distinguishable from this case and is not controlling precedent here.

In the within case, the trial judge said:

"Now it would seem to me that to say that this man now is reasonably qualified by education, training, or experience to do anything but fly is stretching it a little bit far. Clearly his whole adult life for all practical purposes has been devoted to flying, and to say now that at age 51 he is reasonably qualified by education, training, or experience to undertake something else, real estate or some other type of employment, seems to me stretching the language a little bit."

We do not believe his finding was clearly erroneous.

To hold as defendant contends would be to interpret the policy as extending very limited coverage. We believe the coverage afforded under this group policy looked to the work performed by the employee for this employer. We also note that the work experience relied upon by defendant as a basis to attempt to defeat liability occurred many years ago. The trial judge's ruling is consistent with the Michigan cases.

We hold, therefore, that under the terms of the insurance policy in question, plaintiff is unable to engage in any occupation or employment for which he is reasonably qualified by education, training or experience. Consistent with this conclusion, we affirm the award of partial summary judgment in favor of plaintiff by the trial court.

Plaintiff entitled his motion to be one for partial summary judgment, but did not specify the section of GCR 1963, 117 under which it was brought.

Since the motion expressly referred to depositions, answers to interrogatories and the record, it would appear to be under GCR 1963, 117.2(3); although, in another sense, it resembles a GCR 1963, 117.2(2) motion. It is better practice to designate the specific court rule under which a motion is brought. However, since the bare facts are not in dispute, and in view of our conclusion, we will not remand for clarification of which section of GCR 1963, 117, upon which plaintiff intended to base his motion. Defendant's motion was for summary judgment under GCR 1963, 117.2(3).

Our ruling would appear to be supportable under either GCR 1963, 117.2(2) or (3).

Affirmed.