KNAUSS v STATE EMPLOYEES' RETIREMENT SYSTEM

Docket No. 80380. Submitted March 20, 1985, at Lansing.—Decided June 18, 1985.

Teresa Knauss applied for disability-retirement benefits from the State Employees' Retirement System when an injury she suffered in a fall on the job made it impossible for her to perform her duties as a licensed practical nurse at the Coldwater Regional Center, Department of Mental Health. The retirement system board denied benefits on the basis that Knauss was not totally incapacitated from performing any duty. She appealed to the Ingham Circuit Court, which reversed and ordered payment of benefits, holding that only a person's capacity to perform the work previously performed would defeat a claim for disability-retirement benefits, Thomas L. Brown, J. The State Employees' Retirement System appealed. *Held:*

1. The statutory scheme anticipates that a person who is eligible for disability-retirement benefits could be employed in another job.

2. The trial court erred in holding that a person who cannot perform his or her previous job is always entitled to disability-retirement benefits. The proper standard is that benefits should be payable where the disabled person is unable to engage in employment reasonably related to the person's past experience and training.

3. Applying the proper standard to the facts of this case, the claimant should receive benefits because all of her previous experience and training is in the field of nursing, which she can no longer perform because of her work-related disability.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

A court, when interpreting a statute, while it should give great deference to a governmental agency's interpretation, has the

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 168.

[2] 60 Am Jur 2d, Pensions and Retirement Funds §§ 39-72.

Determination whether peace officer's disability is service-connected for disability pension purposes. 12 ALR4th 1158.

duty to determine and apply the Legislature's intent, considering the entire statutory scheme.

2. STATUTES — DISABILITY RETIREMENT BENEFITS — STATE EMPLOYEES.
    State employees disability retirement benefits should be payable to a claimant who, while arguably able to perform other work, has experience and training only in the field in which he or she has been employed and who, because of a work-related disability, can no longer perform his or her previous job nor engage in employment reasonably related to the person's past experience and training (MCL 38.21, 38.33; MSA 3.981[21], 3.981[33]).

*Bobay, Kaechele & Wilensky, P.C.* (by *Thomas P. Bobay*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael A. Lockman* and *Susan A. Harris,* Assistants Attorney General, for appellant.

Before: R. B. BURNS, P.J., and R. M. MAHER and G. R. DENEWETH,* JJ.

R. B. BURNS, P.J. Plaintiff Teresa Knauss applied for disability-retirement benefits, pursuant to MCL 38.21; MSA 3.981(21), in May, 1980. Following a denial by the State Employees' Retirement System Board, plaintiff filed an appeal in the Ingham County Circuit Court. The board now appeals from the circuit court judge's order of August 20, 1984, awarding plaintiff disability-retirement benefits and reversing the board's opinion.

Plaintiff worked as a licensed practical nurse at Coldwater Regional Center from November, 1970, until June 20, 1980. In December, 1971, she fell while working and injured her right knee. Plaintiff continued working, but her knee required surgery in October, 1973. By January, 1979, the knee had

* Circuit judge, sitting on the Court of Appeals by assignment.

deteriorated to the point where she no longer could perform her nursing duties. Plaintiff was off work from Janurary 23, 1979, until December 16, 1979. In December, 1979, she worked for the center as a special attendant. The job primarily involved answering the telephone and filling out medicine record cards. The job only lasted six months.

According to plaintiff, nursing was the only occupation she was trained to perform. She had taken a secretarial course, but could not type more than 40 words per minute. She had also attempted working in medical records, but the job entailed duties outside her medical restrictions. Plaintiff was 31 years old at the time of the September 18, 1980, hearing.

Dr. William B. Comai, plaintiff's treating physician, testified that, as a result of her accident, plaintiff had developed degenerative arthritis in her right knee. Plaintiff also suffered from hardening of the tissue in the left knee. Dr. Comai said that plaintiff could not kneel or squat, lift over 30 pounds, lift anything from the floor, climb stairs, or walk or stand for any length of time.

Section 21 of the State Employees' Retirement Act provides:

"Subject to the provisions of sections 33 and 34, upon the application of a member, or his department head, or the state personnel director, a member who becomes totally incapacitated for duty in the service of the state of Michigan without willful negligence on his part, by reason of a personal injury or disease, which the retirement board finds to have occurred as the natural and proximate result of the said member's actual performance of duty in the service of the state, shall be retired: Provided, The medical advisor after a medical examination of said member shall certify in writing that said member is mentally or physcially totally

incapacitated for the further performance of duty in the service of the state, and that such incapacity will probably be permanent, and that said member should be retired: And provided further, That the retirement board concurs in the recommendation of the medical advisor." MCL 38.21; MSA 3.981(21).

In reversing the board's denial of benefits to plaintiff, the trial judge noted that § 33(a) of the retirement act, MCL 38.33(a); MSA 3.981(33)(a),[1] allows the state to restore a disability retirant to active service if the retirant is "physically able and capable of resuming employment". In the judge's opinion, the Legislature's use of the words "restore" and "resume" in that provision implied that the physical capacity which would defeat the person's claim of total disability was the capacity to perform the work previously performed by the retirant. In addition, the judge noted that § 33(b) of the act, MCL 38.33(b); MSA 3.981(33)(b),[2] antici-

---

[1] "Once each year during the first 5 years following the retirement of a member on a disability retirement allowance, and at least once in every 3 year period thereafter the retirement board may, and upon the retirant's application shall, require any disability retirant, who has not attained age 60 years, to undergo a medical examination; such examination to be made by or under the direction of the medical advisor at the place of residence of said retirant, or other place mutually agreed upon. Should any disabilty retirant, who has not attained age 60 years, refuse to submit to such medical examination in any such period, his disability retirement allowance may be discontinued until his withdrawal of such refusal, and should such refusal continue for 1 year, all his rights in and to his disability retirement allowance may be revoked by the retirement board. If upon such medical examination of a disability retirant, the medical advisor reports and his report is concurred in by the retirement board, that the disability retirant is physically able and capable of resuming employment, he shall be restored to active service with the state and his disability retirement allowance shall cease."

[2] "Should the secretary report and certify to the retirement board that such disability beneficiary is engaged in a gainful occupation paying more than the difference between his disability retirement allowance and his final compensation, and should the retirement board concur in such report, then the amount of his retirement allowance shall be reduced to an amount which together with the amount earned by him shall equal his final compensation. Should the

pated that a disabled person could work in another job. The judge held that the only way to harmonize §§ 21, 33(a) and 33(b) was to interpret § 21 as allowing benefits when the disabled person could no longer perform his or her previous job.[3]

While a court should give great deference to an agency's interpretation of a statute, the court still has the duty to determine and apply the Legislature's intent in passing the statute. *Cf. DAIIE v Comm'r of Insurance,* 119 Mich App 113, 120; 326 NW2d 444 (1982). In ascertaining the Legislature's intent in enacting a statute, the entire statutory scheme should be considered. *Michigan Life Ins Co v Comm'r of Insurance,* 120 Mich App 552, 557; 328 NW2d 82 (1982).

We also read MCL 38.33(b); MSA 3.981(33)(b) as anticipating that a person receiving disability-retirement benefits could be employed in another job. One cannot harmonize the Legislature's allowing a disabled person to work in another job while receiving benefits with the board's interpretaion of "totally incapacitated for duty in service of the state" as meaning "totally incapacitated from any duty".

We disagree, however, with the trial court's decision that the Legislature intended that a person who cannot perform his or her previous job should always be entitled to disability-retirement benefits. In an analogous situation dealing with total-disability benefits provided by a private insurance company, this Court recognized that there are three ways of interpreting the term "total disability":

---

earnings of such disability retirant be later changed, the amount of his retirement allowance shall be further modified in like manner."

[3] The trial court judge adopted the opinion of Ingham County Circuit Court Judge Robert Holmes Bell in *Bowers v State of Michigan,* Ingham County Docket No. 81-27923-AA (Court of Appeals No. 78646).

"1) the *extreme view in favor of the insured* that total disability exists whenever the insured is unable to perform the duties of his particular occupation;

"2) the *extreme view in favor of the insurer* that total disability exists only when there is incapacity to pursue any occupation whatever, and

"3) the *intermediate view,* which regards total disability as a relative term * * *." *Chalmers v Metropolitan Life Ins Co,* 86 Mich App 25, 30-31; 272 NW2d 188 (1978). (Emphasis in original.)

The *Chalmers* Court interpreted prior Michigan law as following the "intermediate view". Consequently, the plaintiff was allowed to recover disability benefits because his past training and experience only "reasonably qualified" him for a job as an airline pilot, a job the lower court found that the plaintiff no longer could perform because of his disability. *Id.,* p 32-33. Similarly, in *Herring v Golden State Mutual Life Ins Co,* 114 Mich App 148; 318 NW2d 641 (1982), this Court allowed the plaintiff to recover total-disability benefits because the plaintiff was only trained to perform his previous occupation as an auto mechanic. *Id.,* pp 152-154. We are of the opinion that a similar standard should also be applied to state-employee disability benefits.

We recognize that the insurance policies involved in *Chalmers* and *Herring* provided for benefits when the insured was unable to engage in any and every gainful occupation for which the insured was fitted by education, training or experience. In other jurisdictions that have also adopted the "intermediate" definition of total disability, the courts have concluded that an insurance policy requiring that the disabled person be unable to engage in any gainful employment should be interpreted as providing benefits when the person is unable to engage in employment reasonably related to the

person's past experience and training. See, *e.g.,* *Kooker v Benefit Ass'n of Railway Employees,* 246 NW2d 743 (ND, 1976); *Travelers Ins Co v Stanley,* 117 Ga App 445; 160 SE2d 876 (1968); *Erreca v Western States Life Ins Co,* 19 Cal 2d 388; 121 P2d 689 (1942). See, also, Anno., *Insurance: "Total Disability" or the like as Referring to Inability to Work in Usual Occupation or in Other Occupations,* 21 ALR3d 1155, pp 1165-1189, and cases cited therein.

The rationale for such an interpretation was discussed in *Erreca, supra.* Therein the Supreme Court of California stated:

"This construction of the words 'any occupation' is based upon the theory that it is unreasonable to deprive an uneducated laborer, disabled from performing any manual work, of the benefits of his policy, because he might, notwithstanding those disabilities, with training and study, pursue a profession at some future date, or become an accountant or a banker. And it would be equally unreasonable to hold that a doctor, lawyer, or business executive is not totally disabled from engaging in 'any occupation' or from performing 'any work' because he is able to run a news stand or work as a day laborer." 19 Cal 2d 395; 121 P2d 694.

As the "intermediate" standard is applied to the facts of the instant case, we agree that plaintiff should receive disability-retirement benefits. All of plaintiff's experience and training is in the field of nursing, a job which she can no longer perform because of her work-related injury. Accordingly, the trial court's decision awarding plaintiff disability-retirement benefits was correct.

Affirmed.