NASON v STATE EMPLOYEES' RETIREMENT SYSTEM

Docket No. 290431. Submitted October 12, 2010, at Marquette. Decided October 28, 2010, at 9:10 a.m.

Michael Nason, a corrections officer, shattered his right heel bone while on vacation and submitted an application for non-duty-related disability retirement benefits to the Office of Retirement Services, which denied the application. Nason then sought a hearing with the State Office of Administrative Hearings and Rules. Following a hearing, the hearing referee issued a proposal for decision, concluding that Nason had suffered a total and permanent disability that rendered him unable to adequately and safely perform his job and that he was entitled to benefits. The hearing referee recommended that the State Employees' Retirement Board adopt her findings of fact and conclusions of law. The State Employees' Retirement System filed exceptions, challenging the hearing referee's recommendation. The board, relying on *Knauss v State Employees' Retirement Sys*, 143 Mich App 644 (1985), determined that petitioner was not entitled to non-duty-related disability retirement status and benefits under MCL 38.24 because, on the basis of Nason's past experience and training, he was still able to perform jobs other than his corrections officer job. Nason appealed in the Marquette Circuit Court, and the court, Thomas L. Solka, J., reversed and remanded the case to the board for the entry of a decision awarding Nason non-duty-related disability retirement benefits. The Court of Appeals granted the retirement system's application for leave to appeal.

The Court of Appeals *held*:

MCL 38.24(1) sets forth the requirements for retirement from state employment because of total incapacitation not related to the employee's performance of his or her duty. The plain and unambiguous language of MCL 38.24(1)(b), which refers to the total incapacitation of a member of the retirement system for further performance of duty, only allows consideration of whether the member can perform the state job from which the member seeks retirement because of a non-duty-related injury or disease, not other employment positions or fields for which the member may be qualified by experience and training. When determining whether

the member is totally incapacitated, it is impermissible to contemplate other jobs or employment fields that might be suitable for the member. The total incapacitation must be related to the member's performance as a state employee and the member's incapacity to continue performing, or to further perform, the state job from which the member seeks retirement. To the extent that *Knauss*, which is not binding under MCR 7.215(J)(1), conflicted with this holding, it must be disavowed. The circuit court's order must be vacated, and the case must be remanded to the board to address the issue whether Nason was totally incapacitated relative to his job as a corrections officer.

Circuit court order vacated and case remanded to the State Employees' Retirement Board for further proceedings.

EMPLOYMENT — STATE EMPLOYEES — RETIREMENT — NON-DUTY-RELATED INJURY OR DISEASE — WORDS AND PHRASES — DUTY — TOTALLY INCAPACITATED.

The term "duty" in the phrase "totally incapacitated for further performance of duty" in MCL 38.24(1)(b) refers or relates solely to the state job from which the member of the State Employees' Retirement System seeks retirement on the basis of a non-duty-related injury or disease; when determining whether the member is totally incapacitated an thus eligible to retire, it is impermissible to consider other jobs or employment fields that might be suitable for the member; total incapacitation relates solely to the incapacity of the member to continue performing, or to further perform, the state job from which the member seeks retirement.

*Pence & Numinen, P.C.* (by *Karl P. Numinen* and *Melanie J. Rohr*), for Michael Nason.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Stephen M. Rideout* and *Kyle P. McLaughlin*, Assistant Attorneys General, for the State Employees' Retirement System.

Before: MURPHY, C.J., and BECKERING and M. J. KELLY, JJ.

MURPHY, C.J. In this case involving petitioner's request for non-duty-related disability retirement status and benefits pursuant to § 24 of the State Employees' Retirement Act (SERA), MCL 38.1 *et seq.*, respondent,

the State Employees' Retirement System (SERS), appeals by leave granted the circuit court's order that reversed the decision of the State Employees' Retirement Board (the Board) to deny petitioner retirement benefits.[1] We vacate the circuit court's order and remand the case to the Board for further proceedings consistent with this opinion.

I. OVERVIEW

Petitioner, a corrections officer, shattered his right calcaneus or heel bone while on vacation and subsequently submitted an application for retirement benefits to the Office of Retirement Services, which denied the application. Petitioner, seeking to dispute the application denial, then filed a request for a hearing with the State Office of Administrative Hearings and Rules, and a hearing was scheduled pursuant to the Administrative Procedures Act (APA), MCL 24.201 *et seq.* Following a hearing before a hearing referee, the referee issued a proposal for decision, determining that petitioner had suffered a total and permanent disability, that the disability rendered petitioner unable to adequately and safely perform his job as a corrections officer, and that petitioner was entitled to benefits. The hearing referee recommended that the Board adopt her findings of fact and conclusions of law. The SERS filed exceptions to the proposal for decision, challenging the hearing referee's recommendation.

---

[1] We note that the administrative proceedings initiated by petitioner listed the SERS as the respondent, but in the circuit court appeal the Board was named as the respondent. On appeal in this Court, the filings by respondent-appellant refer to the SERS as the respondent. Because we believe that the SERS is the properly designated respondent, with the Board being the arbiter of the dispute, we shall treat the SERS as the respondent-appellant.

The Board, relying on *Knauss v State Employees' Retirement Sys*, 143 Mich App 644; 372 NW2d 643 (1985), determined that petitioner was not entitled to retirement status and benefits under § 24 of the SERA, MCL 38.24, because petitioner, on the basis of his past experience and training, was still able to perform jobs other than a corrections officer. On petitioner's appeal in the circuit court, the court reversed and remanded the case to the Board for entry of a decision awarding petitioner non-duty-related disability retirement benefits. The circuit court placed the focus on petitioner's experience and training as a corrections officer, reasoning that the Board had "reached too far back into [petitioner's] employment history . . . before he had any real training and experience . . . ."

We hold that, when read in context, the plain and unambiguous language of MCL 38.24(1)(b), which refers to a member's[2] "total[] incapacitat[ion] for further performance of duty," only allows consideration of whether a member can perform the state job from which the member seeks retirement because of the non-duty-related injury or disease, not other employment positions or fields for which the member may be qualified by experience and training. To the extent that *Knauss*, which is not binding on us, MCR 7.215(J)(1), conflicts with our holding, it is disavowed, given that it did not honor the comparable language in MCL 38.21, the statutory provision that governs duty-related disability retirement status and benefits. Because it is unclear from its decision whether the Board found that petitioner was totally incapacitated relative to his job as a corrections officer, we vacate the circuit court's order and remand the case to the Board to directly address that issue.

---

[2] For purposes of the SERA, a "member" is "a state employee included in the membership of the retirement system[.]" MCL 38.1f(1).

II. UNDERLYING FACTS

At the administrative hearing, petitioner testified that he was 44 years of age, that he was a high school graduate, and that he had taken one semester of criminal justice courses, as required to obtain employment with the Michigan Department of Corrections (DOC). Following graduation from high school, petitioner had worked for Marquette Bottling Works as a truck driver and salesman of Pepsi products for approximately five years. He next worked for Nelson Chevy-Olds selling cars for 2¹/₂ years. Petitioner further testified that he also worked odd jobs, including a job at his parents' store and selling satellite dishes door to door. He started working with the DOC in April 1989.

In February 2006, petitioner was in Tobago on vacation, and as he was walking out of the ocean, a roughly 15-foot wave crested, picking him up and driving his right heel into the hard sand. Petitioner suffered a shattered right calcaneus. He was placed on long-term disability in March 2006.

Petitioner originally saw an orthopedic surgeon, Dr. Robert H. Blotter, about a month after the accident. As a result of the injury, petitioner underwent various surgeries, with numerous pins and screws being placed in his heel. He had to wear a full cast and was still accommodating his injury at the time of the hearing. Petitioner was told that his injury was permanent and that he would be unable to return to work as a corrections officer. He further testified: "I can't run. I can't do steps. The ability to respond to any incident in the prison just isn't there. I don't know if I would trust myself letting somebody else being dependent on me after working in the prison for 18 years."

As of the hearing date, petitioner still suffered from sharp pain while walking, along with discomfort and a

tingling ache all day long. Petitioner testified that he was told by Dr. Blotter that he will likely need to have his ankle fused, which would cause him to completely lose mobility but would remove the pain.

In a letter dated a few months before the hearing, Dr. Blotter indicated that petitioner was stable, but he would not be able to walk effectively on uneven surfaces and might need additional surgery in several years if the pain becomes worse. Dr. Blotter stated that he did not believe that petitioner would be able to return to his old job with the DOC. However, on the basis of independent medical examinations, Dr. Russell E. Holmes opined that petitioner's injury did not render him totally disabled.[3]

On December 13, 2007, the hearing referee issued her proposal for decision. As already indicated, the referee, recommending that the Board adopt her factual findings and legal conclusions, determined that petitioner had suffered a total and permanent disability, that the disability rendered petitioner unable to adequately and safely perform his job as a corrections officer, and that he was entitled to benefits. The hearing referee focused solely on petitioner's job as a corrections officer with the DOC, observing:

Petitioner[] submitted substantive and material evidence that he has a total and permanent disability, which shows that he has met the criteria for non-duty disability retirement benefits pursuant to Section 24 of the Act. The Petitioner['s] employment history with the State [of]

---

[3] We note that the parties stipulated at the hearing that petitioner's application was filed within one year of his termination from state employment and that petitioner was a state employee for at least 10 years before his termination. See MCL 38.24(1)(a) (an application for benefits must be filed no later than one year after termination of state employment) and (c) (the member must have been a state employee for a minimum of 10 years).

Michigan has been only as a corrections officer. With his current impairment, the Petitioner would not be able to guarantee the safety and security of the prison inmates and his fellow corrections officer[s]. He walks with a limp and sometimes uses a cane when necessary, which makes his impairment apparent and obvious. The Petitioner is unable to stand for long periods of time, run, and walk on uneven surfaces. He could be a target or weak point for the inmates, which would put the other prison inmates and corrections officers at increased risk if he was to return to his job. Finally, the Petitioner's employer did not make any reasonable accommodations so that he could return to his correction officer position with his limitations.

The SERS filed exceptions with the Board with respect to the hearing referee's recommendation. The Board, declining to adopt the referee's recommendation and taking note of petitioner's work history, issued a decision and order on April 10, 2008, ruling, as follows:

1. In this proceeding Petitioner has the burden of proving, by a preponderance of the evidence, that he is entitled to non-duty disability retirement benefits under Section 24 of the Act. Petitioner must show that he is unable to engage in employment reasonably related to his past experience and training because of a disability that is likely to be permanent. *Knauss* [143 Mich App 644].

2. While the Petitioner presented documentation from his treating physician, Dr. Blotter, that he will not be able to run or walk effectively on uneven surfaces, the Petitioner can still perform other jobs that he has performed in the past, as he possesses experience and training in a number of occupations that he was employed in prior to working for the state.

3. As the Petitioner has not established by a preponderance of the evidence that he cannot engage in employment reasonably related to his past experience and training, the Petitioner is not eligible for non-duty disability retirement benefits pursuant to MCL 38.24.

Petitioner appealed in the circuit court, arguing that the Board's ruling was erroneous as a matter of law and that the decision was arbitrary, capricious, and based on a misapplication of the law. At oral argument in the circuit court, the court opined:

> I think the question is, is [petitioner] able to return to employment, based on his training and his experience, that he is qualified to perform. And I think we have to look at this in the context of 17 years of employment, much like the 10-year [licensed practical nurse] in the *Knauss* case, his training, taking courses to qualify to apply for employment, and then training for work with the [DOC]. It is a matter of relativity, but I think, frankly, the board reached too far back into . . . [petitioner's] employment history, all the way to post high school, before he had any real training and experience, to reach the conclusion that he was able to perform some of that work, therefore he did not meet the test of total and permanent incapacity.
>
> I find this to be an error of law by the board in application of the *Knauss* case to the statute, and by reason of that error, I'm going to remand this back to the board for entry of a decision adopting the proposal for decision of the [hearing referee] . . . . That is the decision of the Court.

In an order subsequently entered by the circuit court, the court reversed the Board's decision and remanded the case for entry of an order approving petitioner's application for non-duty-related disability retirement benefits. The SERS appeals by leave granted.

### III. ANALYSIS

#### A. STANDARD OF REVIEW—CIRCUIT COURT

In *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002), this Court, setting forth the applicable standard of review relative to a circuit court's review of a decision of the Board, stated:

A circuit court's review of an administrative agency's decision is limited to determining whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law. "Substantial" means evidence that a reasoning mind would accept as sufficient to support a conclusion. Courts should accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views. [Citations omitted.]

### B. OUR STANDARD OF REVIEW

We review a circuit court's decision on an administrative appeal to determine whether the circuit court applied correct legal principles and whether the court misapprehended or grossly misapplied the substantial-evidence test to the agency's factual findings, which essentially constitutes a clearly erroneous standard of review. *Jackson-Rabon v State Employees' Retirement Sys*, 266 Mich App 118, 119; 698 NW2d 157 (2005). A finding is clearly erroneous when, after review of the record, this Court is left with a definite and firm conviction that a mistake was made. *Id.* at 119-120.

Further, we ultimately decide this case on the basis of our interpretation of MCL 38.24, and this Court reviews de novo issues of statutory construction. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 102; 754 NW2d 259 (2008). "When considering an agency's statutory construction, the primary question presented is whether the interpretation is consistent with or contrary to the plain language of the statute." *Id.* at 108. Although a court must consider an agency's interpretation of a statute, "the court's ultimate concern is a proper construction of the plain language of

the statute." *Id.* We do note that in the case at bar the Board relied on *Knauss* in regard to the interpretation of MCL 38.24 and not on any independent agency construction of the statute.

## C. GOVERNING PRINCIPLES OF STATUTORY CONSTRUCTION

In *Zwiers v Growney*, 286 Mich App 38, 44; 778 NW2d 81 (2009), this Court recited the well-established principles of statutory construction:

> Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. In ascertaining legislative intent, this Court gives effect to every word, phrase, and clause in the statute. We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. This Court must avoid a construction that would render any part of a statute surplusage or nugatory. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. If the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [Citations and quotation marks omitted.]

Keeping these principles of statutory construction in mind, we commence our discussion of MCL 38.24.

## D. DISCUSSION

Before examining this Court's decision in *Knauss*, we shall independently construe § 24 of the SERA without contemplation of *Knauss*. MCL 38.24(1) provides:

Except as may otherwise be provided in [MCL 38.33 and 38.34], a member who becomes totally incapacitated for duty because of a personal injury or disease that is not the *natural and proximate result of the member's performance of duty* may be retired if all of the following apply:

(a) The member, the member's personal representative or guardian, the member's department head, or the state personnel director files an application on behalf of the member with the retirement board no later than 1 year after termination of the member's state employment.

(b) A medical advisor conducts a medical examination of the member and certifies in writing that the member is mentally or *physically totally incapacitated for further performance of duty*, that the incapacitation is likely to be permanent, and that the member should be retired.

(c) The member has been a state employee for at least 10 years. [Emphasis added.]

According to MCL 38.24(1)(b), the question of total incapacitation is examined in relationship to the further performance of duty. Thus, in general, a member could be considered totally incapacitated if the member's injury prevents him or her from performing the member's particular job duties. But another member with a different job, having the exact same injury, might not be considered totally incapacitated if the member is still capable of performing his or her particular job duties. Stated otherwise, an injury that hinders one person in performing his or her job duties might not hinder another person who works in a different field given the uniqueness of tasks related to each particular job. And MCL 38.24(1)(b) requires consideration of the injury-to-duty relationship. The issue then becomes whether it is proper to consider not only the state job and associated duties from which a member wishes to retire because of an injury or disease, but also any other job that the member, taking into consideration his or

her past training and experience, may still be capable of performing. In resolving this issue, it is necessary to unravel the meaning and extent of the word "duty" as used in MCL 38.24(1)(b).

For the reasons hereinafter stated, we conclude that "duty" refers or relates solely to the state job from which the member seeks retirement on the basis of a non-duty-related injury or disease; therefore, it is impermissible, in determining whether the member is totally incapacitated, to contemplate other jobs or employment fields that might be suitable for the member.

We initially note that the term "duty" is not defined in the SERA. See MCL 38.1c (definitions of words beginning with the letter "d"). MCL 38.24(1) provides that the injury or disease cannot be "the natural and proximate result of the member's performance of duty . . . ." MCL 38.21(1)(b), on the other hand, pertains to situations in which the injury or disease "*is* the natural and proximate result of the member's performance of duty." (Emphasis added.) These causation provisions address two different scenarios: one in which a member's injury or disease arises directly from the performance of duty and one in which the injury or disease does not arise from the performance of duty. In both instances, the language "performance of duty" clearly and unambiguously refers to work-related or job-related activities, which necessarily means that "duty" can only relate to state employment. In other words, the Legislature envisioned occasions when a member is injured at work while on a state job and occasions, like that which occurred here, when the member, although employed in a state job at the time, is injured outside work. Either way, the term "duty" is a reference or relates to a state job held by the member. It would be nonsensical and unworkable to conclude, for

purposes of causation under MCL 38.24(1) and 38.21(1)(b) that performance of "duty" related to performance of a job or jobs, unrelated to state employment, for which a member had prior relevant training and experience. And where that identical language, "performance of duty," is again used in MCL 38.24(1)(b) with regard to total incapacitation, its definition, for purposes of cohesiveness and harmony, must parallel its meaning elsewhere in the statute and the SERA overall. Accordingly, the term "duty" in MCL 38.24(1)(b) refers or relates to state employment, and thus the total incapacitation must relate to the member's performance as a state employee.

Because a member may have held different state jobs during his or her career, and because a member may have been injured while performing one particular state job with the effect of the injury only becoming disabling later while in a new state job, we next need to address whether MCL 38.24(1)(b) requires contemplation of all previous state jobs or only the one from which a member seeks to retire. The answer to this question is found in the use of the word "further" in MCL 38.24(1)(b) when describing the performance of duty. This indicates that the Legislature was speaking of a duty the performance of which would have been *continuing or extended* but for the injury or disease suffered by the member. Thus, total incapacitation necessarily relates solely to the incapacity of the member to continue performing, or to further perform, the state job from which the member seeks retirement. Additional support for this conclusion is found in MCL 38.33(a), which is referred to in MCL 38.24(1). MCL 38.33(a) provides for postretirement medical examinations of persons retired under, in part, MCL 38.21 or 38.24. If, upon the medical examination, the medical advisor reports and the Board concurs that the retiree

"is physically capable of *resuming* employment," the retiree must be restored to active service with the state and the retirement benefits must be terminated. MCL 38.33(a) (emphasis added). To resume employment means that the member would be picking up where he or she left off, i.e., continuing the state job from which the member retired. Determining the physical capacity to work under MCL 38.33(a) is thus related to the capacity to perform the state job from which the member retired.

Furthermore, MCL 38.33(b) also supports our holding in this case, and it provides as follows:

> If the secretary reports and certifies to the retirement board that a person retired under . . . [MCL 38.24] . . . *is engaged in a gainful occupation* paying more than the difference between his or her disability retirement allowance and his or her final compensation, and if the retirement board concurs in the report, then his or her retirement allowance shall be reduced to an amount which together with the amount earned by him or her shall equal his or her final compensation. Should the earnings of the person retired under . . . [MCL 38.24] . . . be later changed, the amount of his or her retirement allowance shall be further modified in like manner. [Emphasis added.]

This language clearly and unambiguously contemplates situations in which a member is employed, yet has also retired from state employment because of a non-duty-related injury or disease and is collecting state disability retirement benefits. MCL 38.33(b) is completely consistent with our interpretation of MCL 38.24, given that, under our analysis, a member could be totally incapacitated from performing his or her state job and thus receive disability retirement benefits, but not be totally incapacitated relative to performing a different job and thus be "engaged in a gainful occupation," MCL 38.33(b). For example, under MCL 38.33(b),

if a member's final compensation (annual rate of pay)[4] was $50,000 at the time of retirement and the member then began receiving $25,000 in annual retirement benefits, the member would still be permitted to work at a new job and earn up to $25,000 a year without loss of any of his or her retirement benefits. Disability retirement benefits are not terminated in full merely because the member may be working at a new job for which he or she has past experience and training.

We now examine this Court's decision in *Knauss*. The panel considered whether the petitioner, Teresa Knauss, was eligible for duty-related disability retirement benefits under MCL 38.21, which, as indicated, contains the same language, "performance of duty," as MCL 38.24. Knauss worked as a licensed practical nurse at a medical facility, and she injured her right knee in the course of her employment. Because of her knee injury, Knauss could no longer perform her nursing duties. The Board denied her request for disability retirement benefits, but the circuit court, for reasons fairly consistent with our analysis in this opinion, including citation of MCL 38.33(b), reversed that ruling and awarded her benefits. The circuit court concluded that the question whether there was a total disability under the statute related to Knauss's capacity to perform her previous job as a nurse. *Knauss*, 143 Mich App at 645-648.

The *Knauss* panel essentially agreed with the circuit court's construction of the statute, but then deviated from the circuit court's analysis:

> We also read MCL 38.33(b) . . . as anticipating that a person receiving disability-retirement benefits could be employed in another job. One cannot harmonize the Legislature's allowing a disabled person to work in another job

---

[4] See the definitions contained in MCL 38.1e(2) and MCL 38.1b(2).

while receiving benefits with the board's interpretation of "totally incapacitated for duty..." as meaning "totally incapacitated from any duty".

We disagree, however, with the trial court's decision that the Legislature intended that a person who cannot perform his or her previous job should always be entitled to disability-retirement benefits. In an analogous situation dealing with total-disability benefits provided by a private insurance company, this Court recognized that there are three ways of interpreting the term "total disability"[.] [*Knauss*, 143 Mich App at 648.]

The *Knauss* panel, quoting *Chalmers v Metro Life Ins Co*, 86 Mich App 25, 30-31; 272 NW2d 188 (1978), proceeded to list the three interpretations or views and then held that the "intermediate view" would control. *Knauss*, 143 Mich App at 649. The intermediate view examines the question whether there is a total disability by looking at whether a person is able to engage in employment reasonably related to his or her past experience without limiting the examination to looking only at the job that was held when the disability arose, but also without being so expansive as to allow consideration of any job whatsoever. *Id.* The *Knauss* Court, which also cited this Court's decision in *Herring v Golden State Mut Life Ins Co*, 114 Mich App 148; 318 NW2d 641 (1982), then engaged in the following reasoning:

We recognize that the *insurance policies* involved in *Chalmers* and *Herring* provided for benefits when the insured was unable to engage in *any and every gainful occupation for which the insured was fitted by education, training or experience.* In other jurisdictions that have also adopted the "intermediate" definition of total disability, the courts have concluded that an insurance policy requiring that the disabled person be unable to engage in *any gainful employment* should be interpreted as providing benefits when the person is unable to engage in employ-

ment reasonably related to the person's past experience and training. [*Knauss*, 143 Mich App at 649-650 (emphasis added; citations omitted).]

Therefore, the *Knauss* panel not only entirely ignored the language of MCL 38.21 and MCL 38.33 despite agreeing with the circuit court's interpretation of those provisions, it then proceeded to rely on cases interpreting language from insurance policies that were all-encompassing—i.e., considered any gainful employment based on past experience and training—and was completely different from and contradictory to the language of MCL 38.21.[5] *Knauss* is not binding on us, MCR 7.215(J)(1), and we disavow it with respect to the issue presented, given that it did not honor the plain language of MCL 38.21, and by analogy MCL 38.24.

Finally, we acknowledge that in *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 595-596; 701 NW2d 214 (2005), a case that is binding on us under MCR 7.215(J)(1), this Court placed some reliance on *Knauss*. However, *VanZandt* did not cite *Knauss* in connection with the issue that we are addressing. Rather, *VanZandt*, in citing *Knauss*, was addressing the petitioner's criticism that the Board, in rejecting her claim for benefits, improperly relied on evidence of the petitioner's lifestyle and her ability to function outside the workplace when making the determination whether she was totally incapacitated (because of depression) relative to performing her job as a youth specialist. *VanZandt*, 266 Mich App at 594 ("[E]vidence that petitioner was able to function normally in maintaining a home and caring for three small children, two of

---

[5] We note that the panel ended up affirming the circuit court's decision, not its analysis, on the basis that under the intermediate standard, Knauss's only training and experience was as a nurse. *Knauss*, 143 Mich App at 650.

whom had learning disabilities, is probative relative to whether petitioner could function in a workplace setting in which her primary responsibility was supervising troubled youth."). Our holding is not in conflict with *VanZandt*, and to the extent that elements of *Knauss* supported the ruling in *VanZandt*, we are not disavowing those elements of *Knauss*. Indeed, we would agree that here, had there been any evidence showing that petitioner was engaging in physical activities at home that discredited his claim that he could not perform comparable activities at the prison, that evidence would certainly have been admissible.

### IV. CONCLUSION

We hold that when read in context, the plain and unambiguous language of MCL 38.24, which refers to a member's "total[] incapacitat[ion] for further performance of duty," only allows consideration of whether a member can perform the state job from which the member seeks retirement because of the non-duty-related injury or disease, not other employment positions or fields for which the member may be qualified by experience and training. To the extent that *Knauss* conflicts with our holding, it is disavowed, given that it did not honor the comparable language in MCL 38.21, the statutory provision that governs duty-related disability retirement status and benefits. Because it is unclear from its decision whether the Board found that petitioner was totally incapacitated relative to his job as a corrections officer, we vacate the circuit court's order and remand the case to the Board to directly address that issue.

Vacated and remanded to the State Employees' Retirement Board for proceedings consistent with this opinion. We do not retain jurisdiction.