# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA ESCOTT,

Petitioner-Appellee,

v

PUBLIC SCHOOL EMPLOYEES'
RETIREMENT BOARD,

Respondent-Appellant.

FOR PUBLICATION
July 18, 2017
9:00 a.m.

No. 333264
Allegan Circuit Court
LC No. 15-055070-AA

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

We are presented with the question whether respondent has the authority to grant a non-duty disability retirement pension in the absence of a certification by the Independent Medical Advisor (IMA) that the applicant is totally and permanently disabled from the applicant's position as a school teacher. Respondent had rejected petitioner's application on this basis, but the circuit court reversed. We agree with respondent that the certification by the IMA is a prerequisite for respondent to grant the non-duty disability retirement pension.

Petitioner was employed by the Pontiac School District until March 8, 2013, when she accepted a voluntary layoff. She applied for non-duty disability benefits based upon her vision deficit known as bilateral optic atrophy. While she has central vision of 20/25 corrected by glasses, her peripheral vision is reduced to a field of between five and seven degrees, causing a type of tunnel vision. She was first diagnosed with the condition as a child. It is undisputed that the condition is not correctable, but it has been stable throughout her teaching career.

While petitioner acknowledges that her condition has been present throughout her 21-year teaching career, she maintains that changes in the classroom render her unable to continue to perform her teaching duties. Specifically, she refers to technological changes, as well as pedagogical changes and anticipated increases in class size.[1]

---

[1] Although our opinion focuses on the statutory requirement of the disability by the IMA, we note that petitioner's argument does reveal another flaw in her theory: she was able to work up

-1-

After petitioner applied for non-duty disability benefits, respondent designated Dr. R. S. Henderson as the IMA. Dr. Henderson sent petitioner for an independent medical exam and disability determination by Dr. Florence Thomas, an internist. Dr. Thomas' report stated: "Bilateral optic atrophy by history. No gross abnormalities on today's examination. Defer further evaluation to ophthalmology." Dr. Thomas' conclusion was that, "[b]ased on findings of my exam today, I do not find limitations to prevent this examinee from being able to perform job duties." Petitioner testified below that the only vision test she was asked to perform was reading an eye chart with and without her glasses. Additionally, the Office of Retirement Services (ORS) never sent her for further evaluation by an ophthalmologist as suggested by Dr. Thomas.

The IMA, who specializes in physical medicine and rehabilitation, did not conduct a physical examination and based his conclusion on a review of the medical records. Dr. Henderson prepared an official IMA Statement of Disability and stated the following in the certification section:

> Although the medical evidence shows that Ms. Escott has diagnoses of hyperthyroidism, mild hyperinflation of the lungs and a history of bilateral optic atrophy. Her condition for all symptoms and ailments are stable and controlled with medication. She also has diagnoses of chronic obstructive pulmonary disease diagnosis [sic]. However, even with her continued smoking, her recent pulmonary function test revealed mild obstructive lung disease. Ms. Escott is able to perform the duties of her past job as a teacher or any other similar position reasonably related to her education, training or experience. She is able to stand/walk six out of eight hours and lift up to twenty pounds both of which are requirements for being a teacher. Therefore, she does not have a total and permanent medical condition. Thus, she is not eligible for a non-duty disability retirement.

Based upon this report, ORS notified petitioner that her request for non-duty disability benefits was denied. Petitioner requested a hearing and the hearing officer concluded that petitioner was properly denied benefits. This determination was upheld by respondent.

Plaintiff appealed to the circuit court. The basis of her argument was that the eye examination was inadequate and, therefore, the determination was not supported by competent, material, and substantial evidence. She requested a remand to the retirement board to obtain an adequate evaluation of her vision condition. The circuit court found that respondent's decision was not supported by competent, material, and substantial evidence and that it was arbitrary and capricious or constituted an abuse of discretion. The circuit court remanded the matter to respondent with directions to have petitioner "examined by a specialist with expertise in bilateral optic atrophy or a certified ophthalmologist." On reconsideration, the circuit court agreed that it could not remand for an examination by an ophthalmologist. Otherwise, the court upheld its earlier determination. Respondent now appeals.

---

until the day she took the voluntary layoff. That is, her argument is not so much that she is disabled and unable to perform her job duties but that she anticipates becoming so in the future.

This case involves interpretation of the Public School Employees Retirement Act (PSERA). We review questions of statutory interpretation de novo. *Nason v State Employees' Retirement Sys*, 290 Mich App 416, 424; 801 NW2d 889 (2010).

In pertinent part, MCL 38.1386, section 86 of the PSERA, states.

(1) A member whom the retirement board finds to have become totally and permanently disabled for purposes of employment by his or her reporting unit by reason of personal injury or mental or physical illness before termination of reporting unit service and employment shall receive a disability allowance if all of the following requirements are met:

(a) The member has not met age and service requirements of section 81(1)(a) or (b) or, if the member first became a member on or after July 1, 2010, the member has not met age and service requirements of section 81c(1).

(b) The member has at least 10 years of credited service in effect before termination of employment.

(c) The member or reporting unit makes written application to the retirement board not more than 12 months after the date the member terminated public employment.

(d) The person undergoes an examination by 1 or more practicing physicians or medical officers designated by the retirement board who certify to the retirement board that the member is totally and permanently disabled for performing the duties for the member's position or similar position for which the member is qualified by reason of training, experience, or both.

There is no dispute that petitioner met the age and service requirements. The only requirement at issue is the one in (1)(d).

While this presents a question of first impression with respect to PSERA, this Court has considered a similar provision in the State Employees' Retirement Act, MCL 38.1 *et seq.* in *Polania v State Employees' Retirement Sys*, 299 Mich App 322; 830 NW2d 773 (2013). Although the language at issue in *Polania* is slightly different than that in this case, it nevertheless creates the same requirement: that there be certification of total and permanent disability by an IMA in order to receive a non-duty disability retirement benefit.

In *Polania*, this Court concluded that, in the absence of such a certification, the retirement board had no authority to grant the non-duty disability retirement benefits and the circuit court was obligated to affirm that determination:

The Board correctly understood that under the plain meaning of MCL 38.24(1)(b), Polania had to have such a certification before the Board could retire her. Because the record showed that both the medical advisors—one who evaluated her mental health and one who evaluated her physical health—refused to certify that Polania was totally and permanently disabled, the Board properly

-3-

determined that it did not have the authority to grant Polania's request for retirement benefits and, on that basis, denied her claim. The Board did not have to examine the competing medical evidence to determine whether it should exercise its discretion—under the facts of this case, it had no discretion to grant Polania's request for benefits. For these reasons, the trial court erred when it determined that the Board's interpretation of MCL 38.24(1)(b) was incorrect. Moreover, there was no dispute that the medical advisors did not certify that Polania was totally and permanently disabled. As such, there was competent, material, and substantial evidence to support the Board's decision and the trial court erred when it determined otherwise. Consequently, the trial court had to affirm the Board's decision to deny Polania's request for benefits. [299 Mich App at 333.]

We must reach the same conclusion here. Because there is no dispute regarding the lack of certification by the IMA, respondent was obligated to deny petitioner's application for non-duty disability retirement benefits. And, therefore, the circuit court was obligated to affirm that determination because there was competent, substantial and material evidence of the lack of certification.

In conclusion, we reiterate the following observation made in *Polania*, 299 Mich App at 334, regarding the statutory scheme:

This is not to say that we are unsympathetic to the trial court's concerns; there may be powerful incentives—whether conscious or subconscious—for a medical advisor in the Board's employ to refuse to certify employees with a total and permanent disability. And it seems inequitable that an employee who has substantial evidence that he or she is totally and permanently disabled is nevertheless precluded under MCL 38.24(1)(b) from seeking review of a medical advisor's refusal to certify his or her disability. This is especially true when, as here, the employee's evidence is founded on his or her long-time treating physicians' opinions and the Board's decision is dictated by the opinion of a medical advisor who had never examined the employee. But this Court—like the Board itself—is not at liberty to ignore the Legislature's policy choices simply because we might find them to be unjust or unwise. *Johnson v Recca,* 492 Mich 169, 187; 821 NW2d 520 (2012). [Footnote omitted.]

Reversed and remanded to the circuit court for entry of an order affirming respondent's decision. Respondent may tax costs. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra